## Commonwealth v. Caraballo

*Catherine J. Nadirov, assistant district attorney,* for Commonwealth.

*Amy J. Shaffer, assistant public defender,* for defendant.

LASH, *J.,* March 18, 2010—The matter before this court is the motion of the defendant, Henry Antonio Caraballo, to have the above-captioned matter transferred from adult criminal court to juvenile court, pursuant to the decertification procedures set forth in section 6322 of the Juvenile Act.[1] The Commonwealth has charged defendant with, among other things, robbery, a felony of the first degree under 18 Pa.C.S. §3701(a)(1)(ii), and criminal conspiracy to commit robbery, also a felony of the first degree under 18 Pa.C.S. §903(a)(1), based on an incident alleged to have occurred on December 11, 2006. At that time, defendant was a minor, having been born on October 14, 1989. A hearing on the motion was held before this court on March 12, 2010.

The incident was alleged to have occurred at the Memmo home in Lower Heidelberg Township, Berks County, Pennsylvania, and was alleged to have involved defendant and three co-conspirators, his older brother, Omar Caraballo, defendant's girlfriend, Kimberly L.

---

1. 42 Pa.C.S. §6322.

Weniger, and an associate, Tyler Minggia. The three co-conspirators were all adults.

At the aforesaid time and place, the four individuals entered the Memmo household. At that time, Mrs. Carol Memmo, and her son, Cameron, were home. According to the probable cause, Mrs. Memmo was in her bedroom on her cell phone when four masked individuals with guns entered her room and waved to her, saying "Come on, lady," pushing her into Cameron's room. They began rummaging through Cameron's drawers, asking where the money was hidden, then told Mrs. Memmo to "not look at them." One of the co-conspirators duct taped Mrs. Memmo's eyes, mouth, arms, upper body, and legs. She then heard someone striking Cameron. She then heard someone going through her drawers, then a statement from one of them that they were "going to the basement." At that time, the four individuals escorted Cameron to the basement, then brought Mrs. Memmo and placed her on a chair and tied her down with a string of Christmas lights. Mrs. Memmo heard them pulling file cabinet drawers out and throwing things around, then heard a scuffle, followed by the four individuals going upstairs. In due course, the individuals left the residence and Mrs. Memmo was able to free herself. After doing so, she found Cameron in the basement under a filing cabinet and other furniture, sitting in the corner wearing a blood soaked shirt. The Memmos later ascertained that several items were stolen from the property, the loss being estimated at $8,842.

The probable cause also stated that an additional victim, Collin Woomer, happened to arrive at the Memmo residence just as the four individuals were leaving. The

individuals grabbed Woomer, brought him into the Memmo kitchen, then struck him across the face. While he was lying on the kitchen floor, one of the three males pointed a handgun, believed to be 9 millimeter, and demanded money from him. While three of the individuals exited from the kitchen into the garage, one remained with the gun, and asked the others if he should kill Woomer.

The probable cause also states that two fingerprints were lifted from the duct tape used to tape up Mrs. Memmo, which matched the fingerprints of defendant.

The criminal complaint against defendant was not issued until October 16, 2009. As a result, the charges are currently pending against defendant, who is now 20 years of age and who will turn 21 on October 14, 2010.

Under the Juvenile Act,[2] the juvenile court has jurisdiction over "children" who are charged with "delinquent acts." While defendant qualifies as a "child," [3] the Commonwealth asserts that the juvenile court does not have jurisdiction here because under these facts, the robberies charged against defendant are excluded from the definition of "delinquent act." As set forth in section 6302:

"(2) [Delinquent acts] shall not include:

"(ii) Any of the following prohibited conduct where the child was 15 years of age or older at the time of the alleged conduct and a deadly weapon as defined in 18

2. 42 Pa.C.S. §6301 et seq.
3. 42 Pa.C.S. §6302 defines child as "an individual who is under the age of 18 years."

Pa.C.S. §2301 . . . was used during the commission of the offense, which, if committed by an adult, would be classified as:

"(D) Robbery as defined in 18 Pa.C.S. §3701(a)(1)(i), (ii) or (iii) . . . .

"(I) An attempt, conspiracy or solicitation to commit . . . any of these crimes, as provided in 18 Pa.C.S. §§901 (relating to criminal attempt), 902 (relating to criminal solicitation), and 903 (relating to criminal conspiracy)."

Nevertheless, under the Juvenile Act, defendant may request disposition within the juvenile system through the process of "decertification." In determining whether to decertify a case to juvenile court, the trial court must find that the juvenile has established "by a preponderance of the evidence that the transfer will serve the public interest." 42 Pa.C.S. §6322(a). *Commonwealth v. Sanders,* 814 A.2d 1248, 1250 (Pa. Super. 2003). Section 6322 goes on to state:

"In determining whether the child has so established that the transfer will serve the public interest, the court shall consider the factors contained in section 6355(a)(4)(iii).[4]

Those factors are as follows:

"(A) the impact of the offense on the victim or victims;

"(B) the impact of the offense on the community;

---

4. 42 Pa.C.S. §6355(a)(4)(iii).

"(C) the threat to the safety of the public or any individual posed by the child;

"(D) the nature and circumstances of the offense allegedly committed by the child;

"(E) the degree of the child's culpability;

"(F) the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system; and

"(G) whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:

"(I) age; (II) mental capacity; (III) maturity; (IV) the degree of criminal sophistication exhibited by the child; (V) previous records, if any; (VI) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child; (VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction; (VIII) probation or institutional reports, if any; (IX) any other relevant factors." *Commonwealth v. Sanders,* 814 A.2d at 1250-51.

In his presentation, defendant claims that, after consideration of all the facts and circumstances, his case should be decertified and heard by juvenile court because, among other things, he has no prior criminal record,[5] he

---

5. Subsequent to the incident, defendant was named as a defendant in a protection from abuse petition filed by his girlfriend, the co-conspirator, Kimberly L. Weniger, resulting in a final order being entered on October 22, 2009, after defendant failed to appear. (C.C.P. of Berks County, docket no. 09-12630, I.D. #1.) Subsequently, there have been

lacks criminal sophistication, and that he is amenable to treatment. He presented evidence that he is gainfully employed and is currently seeking to obtain a GED. He has always been polite and respectful at home. This allegation is out of character and was due to his being influenced by his girlfriend, his older brother, and the other individual, all of whom were adults.

Defendant's mother testified regarding two significant personal events, which greatly affected defendant. The first was defendant's father's untimely death. Secondly, was the birth of defendant's child from his relationship with co-conspirator, Kimberly L. Weniger. Defendant's mother testified that these events have changed defendant, who is currently behaving in a mature manner and ready to assume adult responsibilities. Previously, he could not be characterized as a bad child, but was lazy and did not apply himself, particularly in school.

The Commonwealth argues against decertification. The primary thrust of their argument relates to the serious nature of the charges, the effect on the victims and the community, and the adequacy of dispositional alternatives under the juvenile court system, given the fact that the defendant will turn 21 years of age this October, ending by law the juvenile court's jurisdiction over him.

Prior to review of the decertification factors, this court shall address a preliminary jurisdictional issue. To dis-

two indirect criminal contempt petitions filed against defendant, alleging that he violated the aforesaid protection from abuse order. Those contempt petitions are pending.

24

qualify the acts alleged to have been committed by defendant from the definition of delinquent acts, it is required, among other things, that a "deadly weapon . . . was used during the commission of the offense." [6] The allegations do state that at least one gun was used during the commission of the offense, but it is not clear whether the defendant, or one of the other co-conspirators, possessed that gun. The question then is whether the phrase "used during the commission of the offense" could include use by any of the four co-conspirators, or is it necessary that the defendant be using the gun to disqualify his case from being processed under the Juvenile Act.

The law regarding interpretation of a statute is set forth in *Commonwealth v. Dickson,* 591 Pa. 364, 372-73, 918 A.2d 95, 100 (2007), as follows:

"In interpreting a statute, we must ascertain and effectuate the intention of the General Assembly. See 1 Pa.C.S. §1921(a). When statutory language is clear and free from all ambiguity, it generally furnishes the best indication of legislative intent; we must not disregard the statutory language under the pretext of pursuing its spirit. 1 Pa.C.S. §1921(b); *Bowser v. Blom,* 569 Pa. 609, 807 A.2d 830, 835 (2002). Accordingly, a reviewing court should resort to other considerations to determine legislative intent only when the words of the statute are not explicit. 1 Pa.C.S. §1921(b); *O'Rourke v. Commonwealth, Department of Corrections,* 566 Pa. 161, 778 A.2d 1194, 1201 (2001). Finally, while minding our

---

6. 42 Pa.C.S. §6302 "Delinquent Act" (2)(ii).

other principles of statutory construction, we must construe all penal provisions strictly in favor of defendants' liberty interests. 1 Pa.C.S. §1928(b)(1); cf. *Commonwealth v. Wooten,* 519 Pa. 45, 545 A.2d 876, 879 (1988) ('[W]here an ambiguity exists in the language employed by the legislature in a penal statute, it should be interpreted in a light most favorable to the criminally accused.'). But see *id.* at 880 ('while strict construction of penal statutes is required, however, courts are not required to give words of a criminal statute their narrowest meaning or disregard evident legislative intent.')."

We are not aware of any appellate precedent construing the applicable provisions of section 6302. However, we do find guidance from appellate case law interpreting statutory and regulatory language addressing similar concerns, albeit in a different context. In *Dickson,* the question was whether the mandatory sentence enhancement on a person who visibly possesses a firearm during the commission of a crime of violence, as set forth in 42 Pa.C.S. §9712, applies to an unarmed defendant, where his co-conspirator brandishes a firearm during the commission of the offense. Section 9712 provides, in pertinent part:

"(a) *Mandatory sentence.*— . . . [A]ny person who is convicted in any court of this Commonwealth of a crime of violence as defined in section 9714(g) . . . shall, if the person visibly possessed a firearm or a replica of a firearm, whether or not the firearm or replica was loaded or functional, that placed the victim in reasonable fear of death or serious bodily injury, during the commission of the offense, be sentenced to a minimum sentence of at least five years of total confinement . . . ."

In reversing the Superior Court, who had affirmed the trial court, the Supreme Court determined that section 9712(a) shall only apply to a defendant who "visibly possesses a firearm or a firearm replica," not to any un-armed co-conspirators.

In *Commonwealth v. Phillips,* 946 A.2d 103, 113 (Pa. Super. 2008), the court was called upon to review the deadly weapon enhancement set forth in section 303.10 of the Pennsylvania Sentencing Code[7] which states, in pertinent part:

"(a) Deadly weapon enhancement.

"(1) When the court determines that the offender possessed a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/possessed matrix (section 303.17). An offender has possessed a deadly weapon if any of the following were on the offender's person *or within his immediate physical control:*

"(i) Any firearm, (as defined in 42 Pa.C.S. §9712) whether loaded or unloaded . . . ." (emphasis in original)

The Superior Court distinguishes *Dickson* by the language of the applicable provision, finding that actual possession of the deadly weapon by a defendant was not required to permit employment of the deadly weapon enhancement of the sentencing guidelines, it being sufficient that the defendant was in close proximity to the firearm, sufficient to place the firearm "within his immediate physical control."

---

7. 204 Pa. Code §303.10.

From these cases, we observe that the appellate courts construed the language in the respective provisions literally, giving plain meaning to the words, and being careful not to extend the scope of the provisions beyond the parameters set forth.

Comparing the provision at bar, we find it to have a lower threshold then either the mandatory sentence provision or the deadly weapon enhancement provision. Unlike those provisions, section 6302 does not require possession by the defendant, nor immediate proximity to the weapon. It is only necessary that the weapon was used in the commission of the offense. Implicitly, since the provision does not require possession by the defendant, the use could be by a co-conspirator, so long as it was used during the commission of the offense. If the General Assembly had intended the provision to require the defendant to be in possession of the firearm, it would have so stated, as it did in the mandatory sentence enhancement provision. Accordingly, we find that the Commonwealth properly determined that the juvenile court did not have jurisdiction over this matter and that the matter should properly be prosecuted in adult court.

Turning then to the factors set forth in section 6322, we initially note that the offense was extremely serious. This was a home invasion which occurred when residents of the home were present. One of the residents and an acquaintance were assaulted. The victims were aware of the presence of a gun, and the acquaintance was threatened with death. Several of the charges are graded as felony one crimes.

These crimes also caused significant adverse impact on the victims. Their safety and security were threatened. Two were beaten and all were in fear of their well-being. During the court proceeding, conducted several years after the incident, the stress upon Mrs. Memmo and Woomer, who both testified, was palpable. The victims will likely experience psychological and emotional effects for years to come. Fortunately, there were no long-term physical effects from the incident. The property loss was substantial, but not devastating.

Likewise, there was likely a significant effect on the community. The community is suburban and affluent. The presence of any type of violence of this nature would normally be rare, if not nonexistent.

Turning then to the defendant, we find he does possess qualities which appear to make him amenable to treatment. He had no prior involvement in the court system. It is likely that his degree of criminal sophistication is slight, unlike his brother and co-conspirator Minggia, who were previously known to the criminal justice system. It is likely that defendant's girlfriend came up with the idea to burglarize this home, as she was an acquaintance of Cameron Memmo. Defendant may have been influenced by his girlfriend or by his brother, but that is not clear from the record.

There is some indicia that defendant is currently moving toward a productive and responsible adult life. This is borne through his maintaining employment and his actions toward being a responsible parent. On the other hand, his choice of girlfriend, the volatile relationship

between them and the resulting protection from abuse order, as well as the allegations of indirect criminal contempt, establish that defendant still possesses personal issues which must be addressed if he is to be accepted as a mature, responsible adult.

An important concern regarding the defendant's amenability to treatment relates to the time constraints on the juvenile system in the event the matter remains in juvenile court. The seven months between now and the date of defendant's 21st birthday is hardly sufficient to properly address the concerns stemming from the seriousness of the offense, or the needs of the community, nor is an adequate time frame for proper supervision and oversight of the defendant. Further, the actual time frame would be less than seven months, as the adjudication hearing would have to be processed first. The goals of treatment, supervision, and rehabilitation, which are the hallmarks of the balanced and restorative juvenile justice system, are simply not quantitatively available for this defendant in juvenile court. Conversely, these goals are available in the adult system, a system which is not restricted by any time constraints, but could monitor and supervise the defendant for several years, depending upon the extent of his sentence.

We find, therefore, that it would not serve the public interest to have the matter decertified. Assuming defendant is found to have committed the offenses, there must be accountability for their commission, at a level beyond that which the juvenile court is capable. As stated, at the very least, there would have to be some extensive supervision, and possibly treatment. The protection of the

30

community and the impact on the victims also require sanctioning beyond that which is accomplished by the juvenile court system. Accordingly, we enter the following order:

## ORDER

And now, March 18, 2010, upon consideration of the motion of defendant, Henry Antonio Caraballo, to decertify the above-captioned matter, and after hearing held, the motion is hereby denied.