J-S13031-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LARISA M. GREGOIRE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL L. GISEWHITE | : | No. 1308 MDA 2021 |

Appeal from the Order Entered September 20, 2021
In the Court of Common Pleas of Perry County Domestic Relations at
No(s): DR-18-0030,
PACSES 785116931

BEFORE: STABILE, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED: MAY 6, 2022**

Larisa Gregoire ("Mother") appeals *pro se* from the order entered on September 20, 2021, in the Court of Common Pleas of Perry County, Domestic Relations, vacating the February 11, 2021, order that had granted Michael Gisewhite's ("Father") petition to modify child support downward and reinstating the January 8, 2021, order setting Father's monthly child support obligation at $600.00.

Herein, Mother contends the court erred only in denying her request for reimbursement of fees paid to an attorney and a private investigator whose services were necessary to prove Father's fraudulent concealment of income. After careful review, we affirm in part, vacate in part, and remand with instructions to award Mother the reasonable fees she paid.

_____

[*] Former Justice specially assigned to the Superior Court.

Mother and Father have one daughter ("Child") born out of wedlock in September 2013. The parties ceased cohabitation approximately 18 months later, and Mother maintained primary physical custody of Child.

On June 12, 2017, Father filed a *pro se* complaint seeking partial custody of Child. Pursuant to a temporary agreement reached by the parties, the trial court granted Mother and Father shared physical custody of Child. **See** Trial Court Order, 8/3/17, at ¶¶ A-B. On September 14, 2017, the trial court issued a custody order awarding legal custody of Child to Mother and Father, with primary custody to Mother and partial physical custody every other weekend to Father.

In the ensuing years, a series of interim orders set varying child support obligations upon Father, whose attempts to "disestablish paternity" and acquire genetic testing were denied by the trial court. Most relevant for present purposes, however, was Father's September 27, 2018, petition to modify the support order then in effect because of an alleged disabling lower back injury that prevented him from engaging in his work as a professional painter. On the same day, the trial court issued an Order for Earnings Report and Health Insurance Coverage Report to Father's listed employer, Laporte Painting.

On October 22, 2018, the trial court entered an Order modifying Father's financial obligation to Child to $0 because

> "[Father] is unable to pay, has no known income or assets and there is no reasonable prospect that [Father] will be able to pay in the foreseeable future. . . . It is further ordered that the

> financial obligation is to be reviewed for further modification upon [Father] attaining employment income, or assets that are available to pay support. [Father] is ordered to immediately report to the Domestic Relations Section any changes in his/her employment, income and assets. . . . If it is determined that [Father] has committed fraud or otherwise materially misrepresented his/her income or assets, and/or if [Father] fails to comply with any provision of this order, the prior order and arrears may be reinstated."

Order, 10/22/18, at 1-2.

On March 14, 2019, the trial court entered an Order indicating that both parties appeared for a review conference to determine Father's ability to pay, and Father produced verification that he is disabled and without economic means or assets with which to pay support. On July 2, 2019, Mother filed *pro se* a new complaint for support in which she reiterated that Father had last made a support payment in the amount of $137.73 on September 20, 2017. Mother, however, abandoned her claim her complaint was dismissed on July 31, 2019.

More than one year later, on August 27, 2020, Mother filed a new complaint for support and, for the first time, was represented by counsel. A conference officer conducted the ensuing September 21, 2020, teleconference during which Father produced no documentation of incapacity and denied having earned income. The conference officer kept the March 14, 2019, order in effect, and the trial court thus entered a corresponding order denying Mother's complaint because, "[a]t this time, [Father] is unable to pay. . . ." Order, 9/21/20, at 1.

On September 22, 2020, counsel for Mother filed a "Demand for Hearing", in which it was claimed "Father refused to provide documentation of continued incapacity to support child. Mother has proof Father is fully employed." More specifically, the Demand claimed, "counsel has specific information that Defendant is gainfully employed in some manner and that the Defendant is not only hiding his true income available for support, but committing a fraud upon this Honorable Court." Demand for Hearing, 9/22/20, at 2.

On the same day, counsel for Mother filed a "Petition to Declare Matter Complex and Request Leave of Court to Take Discovery." In response, the trial court ordered a court hearing and issued a rule to show cause upon Father why discovery should not be granted.

On October 6, 2020, Father filed a *pro se* "Motion to Show Cause" denying Mother's accusations of fraud and claiming he faxed to the conference officer all requested documentary proof of his lack of income. In requesting that the court deny Mother's Petition for Leave of Court to take Discovery, Father argued, in relevant part:

> [Mother] started to say our minor 7-year-old daughter allegedly told [Mother] that "Daddy works," however, right at that very moment [Counsel for Mother] jumps in and makes all kinds of accusations, and negative comments and threats of fraud, SSI fraud etc. etc.
>
> The fact is I'm disabled under the US Disability Act. However, due to my wife being my provider I am NOT entitled to any benefits. Nor have I drawn any benefits from SSI or the Welfare department, as per [Counsel for Mother's] accusations.

I have my own health care as provided by my spouse.

[Counsel for Mother] says he has proof, a smoking gun evidence that I am gainfully employed according to [him and Mother].

However, [Counsel for Mother] does not want to show any proof of his accusations, nor can he show any proof that I'm on anyone's payroll either under, or above the table. And I Demand Strict Proof from Mr. Sheldon.

Father's Motion to Show Cause, 10/06/20, at 1.

On October 7, 2020, the trial court granted Mother's Petition for Leave of Court to take Discovery and scheduled a *de novo* hearing. On November 23, 2020, counsel for Father made his appearance. Prior to the hearing, the parties reached an agreement that Father would pay monthly child support in the amount of $600 for current support and an additional $60 per month in arrears, and assume financial responsibility for 50% of Child's unreimbursed medical expenses.

The parties' agreement was incorporated in the court's final child support Order of January 8, 2021. The effective date of the Order was backdated to August 27, 2020. Order, 1/8/2021.

Less than two weeks later, on January 20, 2021, Father filed a *pro se* Petition for Modification in which he alleged that the adverse effects of Covid-19 upon the apartment rental market had reduced the number of rental units in need of his painting and repair work. Therefore, he maintained, his anticipated income at the time he entered into the child support agreement was much greater than the actual income he was capable of earning.

The trial court set a conference date of February 11, 2021. By its interim order dated February 11, 2021, the trial court modified Father's monthly child support obligation downward to a guideline recommendation $407.00 plus $40 in arrears, based on his current wage of $14.00 per hour at 40 hours a week.

On February 19, 2021, Mother filed a *pro se* Demand for Hearing challenging the court's departure from the previous, agreed-upon monthly support amount of $600 where discovery would have revealed Father fraudulently concealed working over the past three years and affirmatively lied on documentation submitted to the court. Additionally, Mother asked the trial court for reimbursement of her attorney's fees and investigator fees that she claimed were a necessary expenditure to discover Father's fraud and secure appropriate child support for her daughter as reflected in the court's January 8, 2021 order.

At the *de novo* hearing of May 5, 2021, both parties were self-representing. Mother conducted an extensive examination of Father's past claims of disability and unemployment upon which he relied to either modify or eliminate his child support obligations, with a particular focus applied to Father's activities over the latter months of 2020.

Consistent with his prior submissions in Domestic Relations proceedings, Father denied having worked in any capacity from the time of his injury on September 7, 2018, to February 2, 2021, and he asserted his court filings and testimonies to that effect had been truthful. N.T. at 40. Father testified that he resumed gainful employment on February 2, 2021, working for an

individual "who owns various businesses" and receiving payment from a corporation called Premier Catering, Incorporated. N.T. 5/5/21, at 39.

Reproduced below are Mother's line of questioning and the trial court's supplemental inquiries into the apparent inconsistencies with Father's testimony relating to his employment status in the latter months of 2020:

> **Q** [by Mother]: The interrogatories, why do you mention – why do you answer on the questions that you don't work?
>
> **A** [by Father]: Probably I didn't have this job at the time. . . . I didn't have this job with the Stences at the – at that point in time that the interrogatories were --
>
> **Q:** Oh. When did you –
>
> **A:** --were completed.
>
> **Q:** When did you start that job?
>
> **A:** It looks like February 2nd, 2021.
>
> **Q:** Did you work before February 2nd, 2021?
>
> **A:** No, or I would have filed a tax return. I was employed by nobody, and I am not registered as a corporation. I am not registered as a sole proprietor either. I have no insurance. I have no construction degree or none of that.
>
> **THE COURT:** In 2020, did you do any cash jobs, or anything like – anything like that, on the side?
>
> **A:** I have – excuse me?
>
> **THE COURT:** [repeating its previous question]
>
> **A:** No, no.
>
> **THE COURT:** So you started working February 2nd, 2021; and how many hours a week are you working?

**A:** I am working 20 hours a week, and I am lucky for that because of all the failing restaurants and that and during COVID. The lady is good enough to give me that, and I am taking it.

**THE COURT:** What is your hourly rate?

**A:** Fourteen.

**THE COURT:** Do you have any pay stubs?

**A:** Yes, sir, every one of them.

**THE COURT:** Okay. I am sorry. I interrupted you. You may ask him questions.

**Q:** Do you have any medical condition?

**A:** That is protected by HIPAA, Ms. Gregoire.

**Q:** Okay.

**THE COURT:** Well, is there any reason you can't answer that?

**A:** Yes. Yes, I have a lot of reasons. I am not even supposed to be working. I choose to work to support my child.

**THE COURT:** Okay. So you are saying you do not have the physical ability to work full-time, is that correct?

**A:** That's true. No one is going to hire me full-time.

**Q:** Did you work in 2020?

**A:** No. What is your definition of work, Larissa; cutting my grass, cleaning up around my home –

**Q:** You can cut grass?

**A:** --helping a friend out because he gave me, you know, a ride to work or whatever?

**Q:** Are you able to cut grass?

**A:** Sure. I have a John Deere tractor.

**Q:** Are you able to paint?

**A:** I can, for a limited period.

**Q:** Did you start working 2020?

**A:** Nope.

**Q:** Why not?

**A:** I wasn't under any Child Support obligation at that time to get a job; and I was under disabled status, which I still currently am, even though I don't get payment because my wife makes too much.

**Q:** Do you know or do you remember that the case, Child Support case, was closed in 2019 because of your disability; and Mr. Rigger (sic) told you if you have any changes or – your disability or whatever or making any money, you have to report to Domestic Relations?

**A:** Absolutely, and I haven't made any money. Where is the money, Larisa?

**THE COURT:** Sir, you just answer questions. You don't ask them. You are on the witness stand.

**A:** Oh, sorry.

**Q:** [Mother asks a series of questions about whether Father contributes to his household's living expenses]

**A:** I don't think it is any of your business about my personal life, what me and my wife do in our privacy of our home.

**THE COURT:** Sir, it is my business what expenses you pay as part of this Child Support.

So, do you pay any part of the mortgage or household bills?

**A:** Now I do when I – when I am gainfully employed.

**THE COURT:** Did you last year?

**A:** I wasn't employed.

**THE COURT:** So just starting now, have you; on February 2nd, since February 2nd?

**A:** Yes.

. . .

**THE COURT:** [After Mother asks how Father could have petitioned for a modification of child support on January 20, 2021 when he claims he did not start working again until February 2, 2021]

What work were you referring to in your Modification on January 20th because you didn't have a job with [Father's current employer] yet? So what work wasn't happening?

**A:** I was referring to air, I guess, period. There was no substantial claim or promise. I was only basing it on a hunch.

**THE COURT:** On a hunch that you were going to have work with her?

**A:** No, the hunch that I would have more work than I do now.

**THE COURT:** Okay, but I am not talking about when you agreed to the 600 [dollar monthly child support in November 2020].

**A:** I didn't – I didn't agree to that. That was the lawyers. I objected to that. . . .

**THE COURT:** Were you -- were you here in the courtroom when that agreement was entered?

**A:** Yes, I was.

**THE COURT:** And so if I read back over the transcript, I am going to read – find it in there that you said, no, I don't agree to that.

**A:** Well, I agreed under duress. . . .

**THE COURT:** What duress were you under?

**A:** [Counsel for Mother] was making all kinds of threats or this and that, and he has got big evidence and all this. I mean, I didn't want to go through all that.

. . .

**THE COURT:** So what you are telling me is that the duress you are claiming was from opposing counsel telling you he is going to be able to prove you had income?

**A:** No.

. . .

**MOTHER:** Did you file 2019 and 2020 tax return[s]?

**A:** Our tax person is in the middle of filing our '20 right now. And 2019, yes, I did file a tax return. It was joint, my wife and I together, just like this year's.

**Q:** Did you show any income; your personal income, not just on your wife?

**A:** No.

**Q:** So you don't –

**A:** I didn't have any income. I didn't have a job.

N.T. 5/5/21 at 40-43, 44, 49, 51, 52, 53, 54-55.

Mother sought to prove the falsity of Father's testimony with the testimony of Gerald Henneman, a former criminal investigator with the Pennsylvania State Police and now private investigator whom Mother hired on August 13, 2020, to investigate whether Father was secretly earning income. N.T. at 59. Mr. Henneman recounted how, on multiple dates from August 19,

2020, through February 26, 2021, he surveilled Father and observed him engaged in professional painting and related repair work at a large commercial complex in Camp Hill that housed numerous businesses including a salon, a restaurant, and a catering company. N.T. at 60-61.

It was Henneman's opinion that Father's large-scale job was already well-underway when he began his surveillance on August 19, 2020, as he viewed Father enter the building with a key at 8:30 a.m. to start the workday and, upon following Father inside at 8:50, noticed the work site was established with scaffolding, various paint containers, and equipment. N.T. at 61.

Henneman struck up a conversation with Father about the project, and Father explained he had been painting the area for the landlord, Premier Catering, in preparation for a new hair salon to occupy the space. *Id*. At conversation's end, Henneman watched Father "jump back up on the scaffold" and continue painting the ceiling. *Id*.

On August 25, 2020, and September 22nd and 24th, 2020, Henneman returned to the Camp Hill complex during work hours and saw Father there. N.T. at 62-65. He took pictures and video of Father entering and leaving the building, at times clapping off work dust from his shoes and clothing or carrying a thermos and lunch pail. *Id*.

On October 2, 2020, Henneman confirmed the salon had opened at the site. The salon owner knew Father but could not direct Henneman to where Father might be. N.T. at 65. Henneman testified that he witnessed Father

working at the Camp Hill site for six weeks during a time frame in which Father was telling the trial court he was unemployed. *Id*.

Henneman also questioned Father's claim that he earns only $14 per hour as a painter given Father's upscale clients. Specifically, Henneman referenced his February 26, 2021 surveillance of Father working at an exclusive Camp Hill residence that Henneman described as an "extremely large, beautiful property overlooking the Capitol of Harrisburg" N.T. at 66. Henneman researched the residence and learned it is assessed at $1,200,000 and borders several other properties assessed at over $2,000,000. N.T. at 67.

At the conclusion of evidence, the trial court announced that it was admitting into the record Mother's exhibits on her attorney and investigator expenses but would reserve decision on her request for reimbursement: "I am going to have to do some research. I have never had somebody ask for those. I don't think they are appropriate anywhere under the Support Law, but I am not positive on that." N.T. at 77.

On September 13, 2021, the trial court entered its Order vacating the modified order of February 11, 2021 and reinstating the terms of the January 8, 2021 order, which set monthly child support at $600 and an additional $60 toward arrears.

However, despite finding the private investigator to be credible, the trial court denied Mother's request for private investigator fees and attorney's fees as "inappropriate." Order, 9/20/21.

J-S13031-22

Mother filed a timely *pro se* appeal and a court-ordered Pa.R.A.P. 1925(b) statement challenging the trial court's denial of attorney's and investigator's fees. *See* Concise Statement pursuant to Pa.R.A.P. 1925(b), at 1-2. Specifically raised in Mother's Rule 1925(b) statement was the question of whether the court's order denying fees was erroneous when such fees "can be assessed in cases where a party's action in conduction [sic] custody litigation and child support obligations are arbitrary, vexatious, or in bad faith, pursuant to 42 Pa.C.S.A. § 2503[1] . . . . *Holler v. Smith*, 928 A.2d 330 (Pa.

_____

[1] Section 2503 provides, in relevant part:

**§ 2503. Right of participants to receive counsel fees**

The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:

> (6) Any participant who is awarded counsel fees as a sanction against another participant for violation of any general rule which expressly prescribes the award of counsel fees as a sanction for dilatory, obdurate or vexatious conduct during the pendency of any matter.
>
> . . .
>
> (9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.

42 Pa.C.S.A. § 2503.

Pertinent to Section 2503(6), and as discussed below, 23 Pa.C.S.A. § 4351 expressly prescribes the award of fees for legal and other services necessary to overcome the unreasonable, obstreperous, or bad faith conduct of an obligor in a child support case.

- 14 -

Super. 2007)."[2] The statement further averred that the fees were necessary to enlist legal and investigative services required to prove Father was fraudulently avoiding child support obligations.

In the trial court's responsive Pa.R.A.P. 1925(a) opinion, it explains that it reached its decision after consulting Pennsylvania Rules of Civil Procedure 1910.16-5 and 1910.16-6, which permit adjustments to child support calculations for certain expenses including childcare costs, health insurance premiums, medical bills, and other described expenses. Specifically, the trial court opined that because attorney's fees and private investigator fees did not

_____

[2] In **Holler**, a child custody matter, the father filed a petition for counsel fees 11 months after the trial court had entered an underlying order awarding father partial custody of child and dismissing as unfounded mother's and in-laws' allegations that father abused child. After a hearing, the trial court awarded father $5,000 in counsel fees, and mother and in-laws appealed.

This Court affirmed, finding the trial court retained jurisdiction to entertain father's petition for counsel fees filed eleven months after the underlying order, despite 42 Pa.C.S.A. 5505 (prescribing an order must be modified within 30 days), as custody orders are temporary in nature and typically undergo periodic review and modification.

Furthermore, we noted, the statute relied upon by father, 42 Pa.C.S.A. § 2503, "does not contain a provision indicating when such an action may be deemed untimely. Rather, the particular facts and circumstances of a case dictate the ultimate timing of such an award." **Id.** at 332. Turning to the particular facts of the case, we found the record substantiated that the trial court had addressed mother's and in-laws' bad faith conduct not only at the hearing on the underlying order 11 months earlier but also at the subsequent hearing on father's petition for fees. **Id**.

fit within any of these delineated categories, Mother was not entitled to reimbursement of these fees. [3]

In Mother's *pro se* brief, she develops the issue of whether the court erred in denying her request for counsel and investigator fees paid in late 2020 and early 2021, when such expenses were necessary to prove at the May 5, 2021, *de novo* support hearing that Father had been concealing his income to the detriment of the parties' minor child. As she did in her Rule 1925(b) statement, she asks this Court to consider the fees reimbursable pursuant to statutory authority and interpreting jurisprudence acknowledging the fluidity of domestic relations orders such as those awarding child support.

In child support matters involving an award of attorneys' fees, our standard of appellate review is for an abuse of discretion. **Bowser v. Blom**, 807 A.2d 830, 834 (Pa. 2002); **Krebs v. Krebs**, 975 A.2d 1178, 1180 (Pa. Super. 2009). An abuse of discretion occurs when there is a misapplication of the law or an unreasonable exercise of judgment. **Diament v. Diament**, 816 A.2d 256, 263–264 (Pa. Super. 2003).

_____

[3] Rule 1910.16-5 provides guidance on when to deviate from the basic child support obligation, while Rule 1910.16-6 addresses how to allocate between parties the additional expenses often encountered in raising a child. As Mother's request for reimbursement of professional fees necessary to prove Father's concealment of earned income implicates neither of these Rules of Civil Procedure, we find them inapposite to the present matter. As discussed more fully *infra*, we rely, instead, on authority permitting the award of reasonable fees necessary to prove a child support obligor's fraudulent failure to disclose income.

It is well-settled that a party who prevails in obtaining a child support order upon an obstructionist obligor may be entitled to an award of fees and costs associated with presenting her meritorious case:

> An award of attorneys' fees to the prevailing obligee incurred in a support matter is authorized pursuant to 23 Pa.C.S.A. § 4351.
>
> This section provides, in pertinent part, as follows: "If an obligee prevails in a proceeding to establish paternity or to obtain a support order, the court may assess against the obligor filing fees, reasonable attorney fees and necessary travel and other reasonable costs and expenses incurred by the obligee and the obligee's witnesses." 23 Pa.C.S.A. § 4351(a).
>
> In construing Section 4351, our Supreme Court has indicated that unreasonable or obstreperous conduct on the part of the obligor in a child support action is one basis which would warrant an award of attorneys' fees to the obligee.[] The guidance provided by the Supreme Court in **Bowser** instructs that the obligor in a child support case who unnecessarily imposes costs on an obligee by improperly impeding the determination of the appropriate level of support should bear the costs for such improper behavior.
>
> Thus, unreasonable or obstreperous conduct on the part of the obligor in a child support action warrants an award of counsel fees to the obligee. **Bowser**, 807 A.2d at 836.

**Krebs** 975 A.2d at 1180-81.

In **Krebs**, this Court found that the father who had fraudulently concealed income increases to avoid additional child support obligations was solely responsible for the proceedings resulting in the attorneys' fees at issue. **Krebs**, *supra* at 1182. Accordingly, we held that the trial court abused its discretion when it awarded only one-third of the attorneys' fees that the wife incurred during the case instead of the full amount requested.

> The matter *sub judice* is a prime example of unreasonable and obstreperous conduct on the part of a litigant. This is not a case where Husband merely defended the action in good faith; rather this is a case where Husband fraudulently concealed increases to his income from the time period of 2001 through 2006 in order to avoid paying additional child support.

*Id*.

Here, comparable to **Krebs**, Mother claimed that Father's fraudulent concealment of his earned income was the sole cause of the domestic relations proceedings that necessitated Mother's legal and investigative fees. Indeed, Father practically admitted in his testimony that he acceded to the January 8, 2021, child support agreement only to avoid discovery proceedings initiated by Mother's counsel and investigator, and his petition for modification filed a mere 12 days later threatened to undermine the parties' agreement and managed to secure an interim order decreasing his obligation by over $200 per month.

Were it not for the testimony of Mother's private investigator, whom the trial court found credible, Mother likely would have been unable to disprove both Father's denials of income concealment and his latest contention of limited work opportunity. Similarly, the trial court's reinstatement of the $600 monthly support obligation was tacit validation of counsel's prior orchestration of legal and investigative efforts necessary to shed light on Father's fraudulent course of conduct and to secure for child the January 8, 2021 support order.

We conclude, therefore, that the trial court erroneously determined it was without legal authority to award Mother attorney's fees and private investigator fees in this matter, where the record shows the court found Father

had both fraudulently concealed income in 2020 and continued to lie about it at the May 5, 2021, hearing in an effort to thwart the January 8, 2021, child support order. **See Holler**, **supra** (affirming order granting petition for counsel fees incurred eleven months earlier to secure a favorable custody order; trial court acknowledged party's bad faith during both the custody hearings and the hearing on Father's petition for counsel fees).

Accordingly, we vacate that part of the order denying Mother's request for such fees and remand to the trial court, which shall verify the record of the reasonable attorney's fees and private investigator fees she incurred in her endeavor to expose Father's fraudulent avoidance of his child support obligations and reimburse her accordingly.

Order affirmed in part and vacated in part. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/6/2022