**Angelique S. KRAISINGER, Appellee**

v.

**Paul James KRAISINGER, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 17, 2011.

Filed Dec. 9, 2011.

Joanne R. Wilder, Pittsburgh, for appellant.

Ronald L. Chicka, Greensburg, for appellee.

BEFORE: BENDER, DONOHUE, and PLATT*, JJ.

OPINION BY PLATT, J.:

Husband, Paul James Kraisinger, appeals from the trial court order granting the petition for counsel fees filed by Attorney Ronald L. Chicka, former counsel of Wife, Angelique S. Kraisinger, and awarding counsel fees in the amount of $40,026.13.[1] We affirm.

This child support matter has a protracted and complicated history. We provide only the most salient facts necessary for disposition.

On April 20, 2002, the parties entered into a marriage settlement agreement (First Agreement) without assistance of counsel that, *inter alia,* divided the marital estate and provided for support. (*See* First Agreement, 4/20/02, at 3–5, 6–7). Wife received a farm, valued at $252,000.00, with the agreement that Husband would pay the mortgage of $2,143.35 directly to Wife each month, and a pro-rata share of the taxes and insurance. (*See* Trial Court Opinion, 5/18/11, at 3 n. 3). Also, pursuant to paragraph five of section VII, Wife was obligated to pay Husband's attorney fees, plus any lost income he may incur, if she challenged the agreement's contents. (*See id.* at 8).

On February 8, 2005, Wife initiated a child support action. At the time of filing the complaint, Wife's income was approximately $15,000.00 per year, and Husband averaged a gross income of approximately $300,000.00 per year for the three years previous to the filing of the complaint for child support. (*See* N.T. Child Support Hearing, 9/21/05, at 21, 23–24, 107). Husband contested Wife's action as being precluded by the terms of the First Agreement.

"On March 28, 2005, Wife filed a [p]etition for [c]ontempt alleging that, since the filing of her [c]omplaint for [s]upport, [ ] Husband had unilaterally reduced his monthly support payment by an amount he believed reflected his monthly legal fees." (Trial Ct. Op., at 6). On August 16, 2006, after an evidentiary hearing, the court found Husband in contempt for failing to abide by the First Agreement's terms. (*See* Order, 8/16/06, at 1).[2] It additionally found the provision of the agreement requiring Wife to pay Husband's legal fees if she were to challenge the agreement "void and against public policy." (Trial Ct. Op., at 6).

---

* Retired Senior Judge assigned to the Superior Court.

1. Attorney Chicka is the party opposing this appeal.

2. The trial court found Husband in contempt of court a total of three times for nonpayment of amounts due in this matter between February of 2005 and September of 2007. (*See* N.T. Hearing, 1/20/11, at 112–14).

On September 8, 2006, the court found in favor of Wife and the children on Wife's February 8, 2005 complaint for child support, concluding that, pursuant to the child support guidelines, Husband was underpaying by $1,825.00 per month, for a total monthly payment due of $3,825.00. (*See* Order, 9/08/06). The court also found that Wife's receipt of the farmhouse was part of equitable distribution, and not "consideration for her consent to waive her children's right to pursue modification of support." (Trial Ct. Op., at 6).

Husband appealed the court's August 16 and September 8, 2006 orders. This Court affirmed the trial court, concluding, in relevant part, that Wife's waiver of her right to seek additional child support in exchange for part of an equitable distribution was invalid. (*See Kraisinger v. Kraisinger*, 928 A.2d 333, 340–41 (Pa.Super.2007)). This Court additionally concluded that "paragraph 5 of section VII is invalid to the extent that it penalizes [Wife] for, and therefore would act to discourage her from, seeking a court's review of the parties' agreement as to child support." (*Id.* at 345).

On July 19, 2006 and August 27, 2007, Wife filed two petitions for counsel fees. The petition filed on July 19th was not litigated because the court was divested of jurisdiction during the pendency of Husband's above appeals and the August 27th petition was withdrawn, and argument canceled, by consent of the parties. (*See* Trial Ct. Op., at 7, 9–10, 15).

On September 19, 2007, after discharging Attorney Chicka, "Wife executed a judgment note promising to pay [him] $30,851.96." (*Id.* at 10). Wife made five $1,000.00 payments on the note. (*See* Sec-

ond Amended Petition for Counsel Fees, 11/12/08, at 3).

On September 28, 2007, Husband and Wife, again without assistance of counsel, entered into an agreement (Second Agreement) modifying the First Agreement, noted by the trial court as follows:

> Without any additional consideration, Wife agreed to (1) accept three thousand three [h]undred dollars less each month in child support[;] (2) convert half of her equitable distribution monthly payments to child support[;] (3) waive her children's right to modify child support[;] and (4) be responsible for her own attorney fees if she ever challenges the provisions of this new agreement.

(Trial Ct. Op., at 10; *see also* Second Agreement, 9/28/07).

On October 4, 2007, Attorney Chicka withdrew as Wife's counsel.

On April 3, 2008, the parties, without counsel, entered into an agreement (Third Agreement) modifying their second agreement. In the Third Agreement,

> [Wife] agreed to terminate all support orders on behalf of herself and her children twenty[-]four months in advance of the emancipation of their youngest child. She also agreed to forego receipt of the monthly payments of $2,395.00 she was to receive as equitable distribution per the original agreement.
>
> Additionally, [ ] Wife agreed that [ ] Husband would not be responsible for any of her attorney fees.

(Trial Ct. Op., at 15).

As a result of the Third Agreement's terms, Wife no longer had any assets and, on May 9, 2008, she filed for Chapter 7 Bankruptcy,[3] listing her debts as

---

**3.** Two years earlier, in response to Wife's questions regarding filing for Chapter 7 Bankruptcy, Attorney Chicka had advised her that

the $2,300.00 per month she was receiving from Husband as equitable distribution would be considered to be more property than she

$26,571.07 owed to Attorney Chicka and $6,408.76 owed to other creditors. (*See id.* at 16).

On August 21, 2008, Wife's Bankruptcy Trustee filed a complaint against her and Husband, alleging that they plotted to defraud Wife's creditors by entering into the Third Agreement. (*See* Bankruptcy Complaint, 8/21/08, at 3 ¶ 17).

> The Trustee alleged in his [c]omplaint that [Wife] and Husband had "plotted to defraud [Wife's] creditors" by invalidating the original equitable distribution provision of the original Marriage Settlement Agreement providing for Husband's definite commitment to pay Wife $2,393.00 a month until February 2017 (a total of $258,444.00), and entering into a new agreement providing for Husband's vague, indefinite promise to provide "financial assistance" in violation of both the Bankruptcy Code, 11 U.S.C. [§ ] 7548 and the Pennsylvania Uniform Fraudulent Transfer Act.
>
> *       *       *
>
> The issue of the parties' fraud was never litigated before the Bankruptcy Court [because] Attorney Chicka withdrew as a creditor and [ ] Wife settled with the remaining creditors[.]

(Trial Ct. Op., at 17–18 (footnote omitted); *see also* Bankruptcy Complaint, 8/21/08, at 3 ¶ 17).

On November 12, 2008, while Wife's Bankruptcy matter was still pending, Attorney Chicka filed a second amended petition for counsel fees in his own name, over Wife's objection, alleging that she and Husband "conspired with one another to deprive Attorney of the counsel fees that were owed to [him]" and that the Third Agreement was fraudulent. (Second Amended Petition for Counsel Fees, 11/12/08, at 4 ¶ 16). On February 26,

2009, the Bankruptcy Court issued an order permitting Attorney Chicka to proceed with his petition in state court. (*See* Bankruptcy Order, 2/26/09, at 3). Husband filed a motion to dismiss the petition with the trial court on the ground that Attorney Chicka had no claim in law or equity. On October 13, 2010, after argument, the court denied Husband's motion. (*See* Order, 10/15/10).

On December 7, 2010 and January 20, 2011, the court held an evidentiary hearing on counsel's petition, after which it entered an order directing Husband to pay Attorney Chicka's counsel fees in the amount of $40,026.13. (*See* Order, 5/18/11, at 1). Husband timely appealed and filed a Rule 1925(b) statement pursuant to the court's order.

Husband raises three questions for our review:

I. Whether 23 Pa.C.S.A. § 4351 provides an attorney with an independent cause of action to collect, from the party opposing the attorney's client, fees incurred and unpaid by the attorney's client[?]

II. Whether interest on counsel fees may be awarded pursuant to 23 Pa.C.S.A. § 4351, which statute does not provide for an award of interest[?]

III. Whether the parties engaged in a fraudulent transfer where the transfer in question was made for consideration and where it did not render either party insolvent[?]

(Husband's Corrected Brief, at 4).

Here, the court, in large part, based its decision that counsel had standing to file the petition and its ultimate grant of the petition on its finding that "the parties entered into a fraudulent agreement for

was entitled to under the Bankruptcy Code.

(*See* Letter from Ronald L. Chicka, 4/12/06).

the purpose of interfering with Attorney Chicka's statutory right to recover reasonable fees." (Trial Ct. Op., at 2). Accordingly, we will address Husband's third issue first.

■ In his third issue, Husband argues that "Attorney Chicka did not meet the test for a showing of fraud, as the testimony showed that the parties intended their *pro se* agreements to address Wife's financial problems, not to defeat a claim by [Attorney] Chicka." (Husband's Corrected Brief, at 18). We disagree.

In prior matters involving review of alleged fraudulent conveyances, we have stated that our standard of review of a decree in equity is particularly limited and that such a decree will not be disturbed unless it is unsupported by the evidence or demonstrably capricious. The findings of the [trial court] will not be reversed unless it appears the [court] clearly abused [its] discretion or committed an error of law. The test is not whether we would have reached the same result on the evidence presented, but whether the [court's] conclusion can reasonably be drawn from the evidence. *Gallaher ex rel. Rockwood Cas. Ins. Co. v. Riddle*, 850 A.2d 748, 749–50 (Pa.Super.2004), *appeal denied*, 580 Pa. 698, 860 A.2d 124 (2004) (citation and quotation marks omitted).

Section 5104 of the Pennsylvania Uniform Fraudulent Transfer Act (UFTA) provides, in relevant part, that:

(a) **General rule.**—A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

(b) **Certain factors.**—In determining actual intent under subsection (a)(1), consideration may be given, among other factors, to whether:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

12 Pa.C.S.A. § 5104.

In applying the foregoing law to the facts of this case, the trial court found that "[t]he parties' intent to defraud the Bankruptcy Court and avoid paying Attorney Chicka's fees is evident in their carefully scripted actions. Moreover, the scheme was clearly intended to benefit both [H]usband and Wife (at the expense of the children)." (Trial Ct. Op., at 20). We agree.

Here, Wife's transfer of over $258,444.00 in marital assets and $30,851.96 of child support arrears was to an insider, *i.e.* Husband. (*See* Third Agreement, 4/03/08, at 1); *see also* 12 Pa.C.S.A. § 5104(b)(1). Although Wife relinquished her equitable distribution right to the farmhouse pursuant to the Third Agreement's terms, she retained possession of real property. (*See* Trial Ct. Op., at 20); *see also* 12 Pa.C.S.A. § 5104(b)(2). The third agreement occurred shortly after Wife signed the judgment note in which she had acknowledged owing Attorney Chicka $30,851.96. (*See* Judgment Note, 9/19/07); *see also* 12 Pa. C.S.A. § 5104(b)(4), (10). The agreement divested Wife of all assets. (*See* Trial Ct. Op., at 16; *see also* 12 Pa.C.S.A. § 5104(b)(5). Wife received no consideration for her relinquishment of her month-ly equitable distribution award and $30,851.96 in child support arrears. (*See* Third Agreement, 4/03/08, at 1–2); *see also* 12 Pa.C.S.A. § 5104(b)(8). Wife was insolvent after the transfer was made, filing for bankruptcy thirty-six days later. (*See* Trial Ct. Op., at 16); *see also* 12 Pa.C.S.A. § 5104(b)(9). Therefore, the transfer meets seven of the ten prongs for the finding of a fraudulent transfer, supporting the court's conclusion that the parties committed fraud.[4] *See* 12 Pa.C.S.A. § 5104(b).

Hence, based on the record in the case *sub judice*, we conclude that the court's finding that the Third Agreement was fraudulent was not an abuse of discretion or error of law. (*See* Trial Ct. Op., at 21); *see also Gallaher, supra* at 749–50. Accordingly, Husband's third issue does not merit relief.

Moreover, pursuant to section 5107(a) of the UFTA, we conclude that the court had the discretion to institute any remedy it found that the circumstances required, including avoidance of the Third Agreement to the extent necessary to satisfy Attorney Chicka's claims.

Section 5107 of the UFTA, providing for creditors' remedies when the Act has been violated, states, in relevant part:

(a) **Available remedies.**—In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in sections 5108 (relating to defenses, liability and protection of transferee) and 5109 (relating to extin-

---

4. Additionally, the trial court found the parties' vague explanations of why they entered into the Third Agreement "strongly indicate that Husband, and most assuredly, [ ] Wife acted in bad faith and with the intent to defraud Attorney Chicka and the Bankruptcy Court." (Trial Ct. Op., at 23). We agree. Husband failed to provide this Court with citations to evidence in the record to support his argument that "the amended agreements were precipitated by a financial catastrophe that threatened to leave Wife, her mother, and the parties' children destitute and homeless." (Husband's Corrected Brief, at 18). Therefore, Husband's argument that he and Wife entered into the Third Agreement because of Wife's financial hardship is not persuasive to this Court.

guishment of cause of action), may obtain:

> (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.

> \* \* \*

> (3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

> \* \* \*

> > (iii) any other relief the circumstances may require.

12 Pa.C.S.A. § 5107(a)(1), (3)(iii).

Here, as more fully discussed above, we conclude that the trial court properly determined that the parties engaged in a fraudulent transfer to defraud counsel of his attorney fees. Accordingly, we conclude that the UFTA provided the court with the discretion to award any relief the circumstances required and, in granting counsel the $40,026.13 due under Wife's judgment note, the court did not abuse that discretion. *See id.* at § 5107(a)(3).

Having concluded that the record supports the court's finding of fraud pursuant to the UFTA and its subsequent grant of relief, we turn to Husband's first two issues challenging the court's award under the Domestic Relations Code.

In Husband's first issue, he argues that the court erred in granting counsel fees to Attorney Chicka pursuant to his petition because he does not have standing pursuant to 23 Pa.C.S.A. § 4351 and that, even if he had standing, the award of fees was improper. (*See* Husband's Corrected Brief, at 8–14). We disagree.

■-■ Our standard of review of the award of counsel fees pursuant to the Domestic Relations Code is for an abuse of discretion. *See Bowser v. Blom,* 569 Pa. 609, 807 A.2d 830, 834 (2002). An abuse of discretion is "[n]ot merely an error of

judgment, but if in reaching a conclusion[,] the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record." *Id.* (citations omitted). "[R]eview of the grant of counsel fees is limited ... and we will reverse only upon a showing of plain error." *Isralsky v. Isralsky,* 824 A.2d 1178, 1192 (Pa.Super.2003) (citation omitted).

Section 4351 of the Domestic Relations Code provides for costs and fees and states, in relevant part:

> (a) **General rule.**—If an obligee prevails in a proceeding to establish paternity or to obtain a support order, the court may assess against the obligor ... **reasonable attorney fees** ... incurred by the obligee.... Attorney fees may be taxed as costs and **shall be ordered to be paid directly to the attorney, who may enforce the order in the attorney's own name.** Payment of support owed to the obligee shall have priority over fees, costs and expenses.

> \* \* \*

> (b) **Lack of good cause for failure to pay on time.**—If the court determines that the person subject to a child support order did not have good cause for failing to make child support payments on time, it may further assess costs and reasonable attorney fees incurred by the party seeking to enforce the order.

23 Pa.C.S.A. § 4351(a)-(b) (some emphasis added).

In construing section 4351, this Court has held that:

> The court must consider the totality of relevant circumstances in deciding whether to award counsel fees.... Factors which the court may consider include: (1) whether the obligor's unreasonable or obstreperous conduct im-

peded the determination of an appropriate support order; (2) whether the obligor mounted a fair and reasonable defense in a child support order; (3) whether the obligor's failure to fulfill his moral and financial obligation to support his children required legal action to force him to accept his responsibilities; and (4) whether the financial positions and financial needs of the parties are disparate.

*Krebs v. Krebs,* 944 A.2d 768, 778 (Pa.Super.2008) (citations omitted).

Here, the trial court found that

[c]learly, the facts and equity warrant an award of counsel fees: Wife endured financial difficulties exacerbated by the significant disparity in their incomes, her lack of potential for earning capacity and ability to acquire assets, and Husband's litigiousness, which unnecessarily protracted the support action, and his contemptuous, unilateral reductions in court-ordered support. . . . This is a right for the benefit of the children, as is the right to modify child support and obtain monthly payments in accordance with the guidelines. Those rights cannot be arbitrarily waived by either parent, at least not under the facts of this case.

(Trial Ct. Op., at 23–24). We agree.

■ We first review Husband's contention that "Attorney Chicka had no standing" to bring this action under 23 Pa. C.S.A. § 4351 because "[t]he right to seek fees resides with the party." (Husband's Corrected Brief, at 8; *see id* at 11).

As stated above, section 4351 provides, in relevant part, that, "[a]ttorney fees may be taxed as costs and shall be ordered to be paid directly to the attorney, who may enforce the order in the attorney's own name." 23 Pa.C.S.A. § 4351(a). There is no language in the statute providing that only a party to the domestic relations action has standing to file a motion for attorney's fees. Accordingly, we conclude that the statute itself provides support for the court's decision to allow Attorney Chicka to proceed on his motion.

Moreover, the fraudulent actions of the parties support a finding that, as an equitable matter, Attorney Chicka had standing to bring this action under the Domestic Relations Code in his own right.

Here, the court found that:

While [ ] Wife may have the power to avoid paying her own lawyer, her own devious conduct does not provide a legal basis to [ ] Husband for avoidance of the court's right to enter appropriate child support orders.

The parties' vague explanations for their reasons to terminate their original Marital Settlement Agreement and the obvious inequity resulting from their subsequent agreements strongly indicate that [ ] Husband and, most assuredly, [ ] Wife acted in bad faith and with the intent to defraud Attorney Chicka and the Bankruptcy Court.

(Trial Ct. Op., at 22–23). We agree.

Wife's Bankruptcy Trustee also suspected the parties of fraudulent activity, filing a complaint against them alleging that they had plotted to defraud Wife's creditors by entering into the Third Agreement, which violated both the Bankruptcy Code, 11 U.S.C. § 547–48, and the UFTA, 12 Pa.C.S.A. § 5104. (*See* Bankruptcy Complaint, 8/21/08, at 3 ¶ 17).

Additionally, the request for attorney's fees was made on three separate occasions,[5] although the issue was never litigated because of the parties' obstreperous conduct. First, Husband's appeals to the

5. The complaint and Wife's petitions were     filed on July 19, 2006 and August 27, 2007.

Superior Court premised on language of the First Agreement that violated public policy divested the court of jurisdiction to consider Wife's July 19, 2006 petition, and then the parties agreed to a self-serving order withdrawing Wife's August 27, 2007 petition with prejudice. (*See* Trial Ct. Op., at 9, 15).

Accordingly, based on the non-limiting language of 23 Pa.C.S.A. § 4351(a), in addition to the evidence of the parties' fraudulent transfer, we conclude that the court did not abuse its discretion when it concluded that Attorney Chicka had standing to bring this action under section 4351 of the Domestic Relations Code as a matter of law and equity.

■ Next, Husband argues that, "[e]ven if Attorney Chicka had standing on his own behalf, an award of counsel fees was improper." (Husband's Corrected Brief, at 14). We disagree.

Wife prevailed in this protracted child support litigation through the reasonable and necessary efforts of Attorney Chicka, receiving a substantial child support award and successfully forcing Husband, pursuant to contempt orders, to fulfill his financial responsibilities to his children. (*See, e.g.,* Order, 8/16/06; Order, 9/08/06; Trial Ct. Op., at 6; N.T. Hearing, 1/20/11, at 112–14). Husband's unreasonable conduct required Wife to incur the legal fees. (*See id.*). The financial positions and needs of the parties are disparate. (*See* N.T. Child Support Hearing, 9/21/05, at 21, 23, 24, 107). Based on the totality of the circumstances, we conclude that the court properly exercised its discretion in determining that an award of counsel fees was appropriate and that it did not err in awarding them pursuant to Attorney Chicka's petition. *See Krebs, supra* at 778; (*see also* Trial Ct. Op., at 19–24). Husband's first issue does not merit relief.

■ In Husband's second issue, he challenges the court's award of interest on the counsel fees. Specifically, he argues that "[t]he trial court erred in awarding interest on counsel fees where the attorney seeking the fees proceeded under 23 Pa. C.S.A. § 4351, which statute does not provide for an award of interest." (Husband's Corrected Brief, at 16). We disagree.

Here, as discussed more fully above, both section 4351 of the Domestic Relations Code and sections 5107(a)(1) and (3) of the UFTA provide the court with discretion to award counsel fees. On September 19, 2007, Wife signed a judgment note in counsel's favor for the payment of outstanding attorney's fees in the amount of $30,851.96. (*See* Judgment Note, 9/19/07). Attorney Chicka testified that deducting the five payments Wife made, and adding the agreed upon interest and collection fee, the total due to counsel was $40,026.13. (*See* N.T. Hearing, 1/20/11, at 134).

Based on statutory authority, and the parties' attempt to defraud Attorney Chicka of the total due under the judgment note, we conclude that the trial court's award of interest was not an abuse of discretion. Accordingly, Husband's second issue does not merit relief.

Order affirmed.