J-A16028-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| LINDA M. FRY, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DANIEL JAMES FRY, | : | |
| | : | |
| Appellant | : | No. 1645 WDA 2016 |

Appeal from the Order Entered September 28, 2016,
in the Court of Common Pleas of Armstrong County,
Civil Division at No(s): 2011-1815-CIVIL

| | | |
|---|---|---|
| LINDA M. FRY, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| DANIEL JAMES FRY, | : | |
| | : | |
| Appellee | : | No. 1646 WDA 2016 |

Appeal from the Order Entered September 28, 2016,
in the Court of Common Pleas of Armstrong County,
Civil Division at No(s): 2011-1815-Civil

BEFORE:    STABILE, J., FORD ELLIOTT, P.J.E., and STRASSBURGER,* J.

MEMORANDUM BY STRASSBURGER, J.:        **FILED SEPTEMBER 12, 2017**

Linda M. Fry (Wife) and Daniel James Fry (Husband) appeal from the order entered September 28, 2016, which decreed that the two of them were divorced and ordered equitable distribution of the marital property. We affirm.

---

*Retired Senior Judge assigned to the Superior Court.

We provide the following background. On August 27, 1996, three days before their marriage, Husband and Wife signed a pre-nuptial agreement (the Agreement). The Agreement provided for disposition of the marital assets in the event of the termination of the parties' marriage. See Petition for Special Relief, 11/22/2011, at Exhibit A. Specifically, the Agreement provided for numerous items of separate property, which would be excluded from being considered as marital property, and therefore not subject to equitable distribution in the event of divorce. *Id*. Wife came into the marriage with significantly more separate property than Husband, including three businesses which she owned and from which she earned a living.[1]

The parties married on August 30, 1996.[2] In 2002, the parties purchased land for the purpose of building a home. Over the course of the next three years, their home was constructed. They resided there together until Husband moved out on September 29, 2011. When Husband moved out of the marital residence, he left without Wife's knowledge while she was away on a trip. According to Wife, when she returned, she found "a stripped house" with "no furniture." N.T., 8/10/2015, at 29. "Everything was gone." *Id*.

---

[1] Wife's businesses were "Infiniti Health Market, Knepshield & Bielek Tax Service, and [an] Accupressure Therapist business." Trial Court Opinion, 9/28/2016, at 5 n.1.

[2] This marriage was Wife's second and Husband's third.

On November 14, 2011, Wife filed a complaint for divorce. Additionally, on November 22, 2011, Wife filed a petition for special relief asking the trial court enter an order requiring Husband to return separate property he removed from the marital residence when he moved out. On January 6, 2012, the trial court entered an order directing that Husband return certain items to Wife, including "[a]ll business records and income tax returns." Order, 1/6/2012, at ¶ 1(D). On January 24, 2012, Wife filed a petition for contempt averring that Husband had not yet returned certain items, including the business records and tax returns.

On February 13, 2012, after a hearing, the trial court found Husband in civil contempt. Litigation over the return of various documents as well as contested items of separate property occurred throughout 2012. On December 12, 2012, the trial court again found Husband in civil contempt. After the filing and dismissal of a fourth motion for contempt, the trial court ordered the appointment of master to resolve the issues between Husband and Wife.

After holding hearings, on February 5, 2016 the master issued a report and recommendation for an equitable distribution scheme consistent with the Agreement. A significant amount of the litigation was spent concerning the marital residence and whether Wife's contributions to its construction rendered it her separate property.

The master made the following factual findings with respect to the residence. On October 19, 2004, the marital residence had an appraised value of $850,000. Master's Report, 2/5/2016, at ¶ 14. On June 4, 2015, the marital residence's appraised value was only $500,000. *Id*. Between 2002 and 2008, the parties spent $853,309.06 on the construction of the marital residence and the purchase of "equipment, furnishings, and appliances" for the marital residence. *Id*. at ¶ 17. The master concluded that 90% of these funds were provided by Wife from her separate property. As of October 1, 2011, the combined mortgage and line of credit for the marital residence was $377,759.37. *Id*. at ¶ 18. While the parties resided together, Husband made the mortgage and line of credit payments. *Id*.

The master concluded that at the time of separation, the property had equity of $110,000. The master also concluded that between 2002 and 2008, Wife spent $135,574.13 of her separate funds on "plumbing, electrical, lumber/structure, and heating" for the property. *Id*. at ¶ II(A). Thus, the master concluded that these expenditures "wipe[d] out the equity in the marital residence" and therefore the martial residence "and all equity" were awarded to Wife. *Id*.

The parties also litigated several other issues. Specifically, the master ordered Husband to pay Wife several amounts for property purchased by

Wife during the marriage,[3] as well as $44,941.87 for counsel fees, and $15,200 for pre-marital expenses that were provided for in the Agreement.

Husband filed exceptions, and on September 28, 2016, the trial court issued an opinion and order. Relevantly, the trial court concluded "the [m]aster erred in finding that the [$853,309.06 in] funds constituted [Wife's] 'separate property' under the terms of the [A]greement." Trial Court Opinion, 9/28/2016, at 6. Although the trial court reached this conclusion, it still awarded the marital residence to Wife. Additionally, the trial court reduced Husband's counsel fees payment to Wife to $15,000.[4] Moreover, the trial court, after doing numerous calculations, concluded that Husband owed Wife $25,400 total, which was significantly less than the amount ordered by the master.[5]

Both Husband and Wife filed notices of appeal, and the trial court and parties complied with Pa.R.A.P. 1925. Husband and Wife set forth numerous

---

[3] Husband was ordered to pay Wife $31,875 for "personal property purchased during the marriage that [was] paid for out of [Wife's] separate funds that have been retained by [Husband]." Master's Order, 2/5/2016, at ¶ 8. The master valued all marital property at $89,330.90, which, on a 50-50 split provided $44,665.45 to each party. Husband's share included $35,000 worth of guns and ammunition and $9,665.45 in property retained by Husband. Husband was ordered to return $14,264.45 worth of property to Wife and pay Wife $30,401.

[4] Husband had already paid $5,000, so the net amount owed to Wife was $10,000.

[5] The trial court accepted the master's conclusion that the guns and ammunition were marital property valued at $35,000. However, the trial court concluded the master undervalued the amount of separate property removed by Husband when he moved out of the marital residence.

issues for our consideration, which we narrow down to three topics: 1) the marital residence, 2) amount payable to Wife, and 3) counsel fees.[6]

We review all of the issues mindful of the following principles.

> It is well established that absent an abuse of discretion on the part of the trial court, we will not reverse an award of equitable distribution. [In addition,] when reviewing the record of the proceedings, we are guided by the fact that trial courts have broad equitable powers to effectuate [economic] justice and we will find an abuse of discretion only if the trial court misapplied the laws or failed to follow proper legal procedures. [Further,] the finder of fact is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below.

*Lee v. Lee*, 978 A.2d 380, 382-83 (Pa. Super. 2009) (quoting *Anzalone v. Anzalone*, 835 A.2d 773, 780 (Pa. Super. 2003)). Additionally, we are cognizant that "a pre-nuptial agreement is a contract and, therefore, is to be evaluated under the same criteria as other contracts; absent fraud, misrepresentation or duress, spouses should be held to the terms of their agreements." *Lugg v. Lugg*, 64 A.3d 1109, 1112 (Pa. Super. 2013). "When interpreting an antenuptial agreement, the court must determine the

---

[6] In reviewing the briefs of Wife and Husband, we admonish both for their failure to comply with Pa.R.A.P. 2119(a), which provides that "[t]he argument shall be divided into as many parts as there are questions to be argued[.]" Wife's brief sets forth 10 separate questions in her statement of questions involved, *see* Wife's Brief at 8-9, but provides no numbering system whatsoever in her argument section, *see id*. at 14-27. Similarly, Husband sets forth six questions in his statement of questions involved, *see* Husband's Brief at 1, but divides his argument section into four sections, *see id*. at 5-12. "While this Court is authorized to [dismiss] a nonconforming brief," we decline to do so where the "procedural misstep[s] do[] not substantially impede our ability to perform appellate review." *M.G. v. L.D.*, 155 A.3d 1083, 1099 (Pa. Super. 2017).

intention of the parties." ***Sabad v. Fessenden***, 825 A.2d 682, 688 (Pa. Super. 2003). "When the words of a contract are clear and unambiguous, the intent of the parties is to be discovered from the express language of the agreement. Where ambiguity exists, however, the courts are free to construe the terms against the drafter and to consider extrinsic evidence in so doing." ***Id*** (internal citations and quotation marks omitted).

## *I. Marital Residence*

Wife first contends that the trial court erred or abused its discretion in interpreting the Agreement by attributing income earned from her businesses, which she contributed to the building of the marital residence, as marital property when it is her position that this income should have been treated as separate property. ***See*** Wife's Brief at 14-20. The relevant portions of the Agreement provide the following.

Article II.  Retention of Separate Property

A.  Each party shall, during his or her remaining lifetime, retain the sole and exclusive ownership of all of his or her respective Separate Property, as that term is hereinafter defined, …

B.  For all purposes of this [Agreement] as used herein, the term "Separate Property" shall be defined as, all of such party's right, title and interest, legal or beneficial, in and to any and all property and interests in property, real, personal titled, or mixed, wherever situate and regardless of how titled, which each of the parties owned or had a beneficial, legal expectancy interest in at the time of their marriage …

C.  **"Separate Property" shall also be defined as: (a) all income**, capital gain or increase or appreciation in value of all property, defined above; (b) all property acquired hereafter

by either party out of the proceeds from the sale, transfer, conveyance, mortgaging or use of such separate property; (c) any interest presently held in a "Business." "Business" for purposes of this [Agreement] shall mean an entity, whether a partnership, sole proprietorship, corporation, joint venture or otherwise, and whether or not the party is actively engaged therein; (d) any life insurance proceeds received by either party as a beneficiary of any insurance at the time of the death of any third party whether the proceeds are received prior to or during the marriage….

Article III. Marital Property

Except as specifically set forth in this [Agreement], all assets acquired in joint names by the parties from the date of their marriage to the date of their separation shall be marital property.

Notwithstanding this provision, however, **it is expressly agreed that in the event that any of the parties' separate property, commingled with marital property, is used to acquire or maintain marital assets, then, to the extent that the separate property so commingled or contributed is traceable, that traceable separate property shall remain the separate property of the party contributing same in the event of divorce or death or either party**.

Petition for Special Relief, 11/22/2011, at Exhibit A (emphasis added).

The trial court offered the following conclusions about the interpretation of this Agreement.

In fashioning his recommendations, the [m]aster traced $853,309.06 paid by [Wife] via one or more of her three businesses toward the costs of constructing and furnishing the marital [residence]. The [m]aster did likewise for the purchase of additional items of personalty that were made from time to time after the parties married but before they separated. The effect of the tracing was to substantially decrease the amount of marital property that was subject to equitable distribution.

In so doing, the [m]aster interpreted the second paragraph of Article III as requiring him to do so. In the case of

the marital home, the [m]aster found that the above-mentioned expenditure of $853,309.06 came "from [Wife's] separate funds." In the case of the additional items of personalty, the [m]aster found that the purchase money was not "from joint funds"; in other words, the money came from [Wife's] business accounts.

[Wife] testified that all these expenditures were, at the end of each year, treated like a "draw."

For the reasons explained below, [the trial court] believes that the [m]aster erred in finding that the funds constituted [Wife's] "separate property" under the terms of the [Agreement].

Article III of the [A]greement does indeed provide that separate property, when used to acquire what would otherwise be marital property, remains separate property to the extent it is traceable. However, the [m]aster incorrectly labeled the draws or payments from [Wife's] business accounts as "separate property" defined in Article II.

\*\*\*

Nowhere is earned income, like salary, wages, or sole proprietorship or partnership profits, defined to be separate property.

The word "income" in Article II's phrase "all income and capital gain, or increase in value of such property" refers to income generated by the property. (Examples of such income would be rent paid by tenants; royalties paid by a natural gas well operator to the landowner; dividends paid to a shareholder; interest paid by a back to the owner of a certificate of deposit; royalties paid for intellectual property, such as a patent; etc.) Capital gain derives from ownership of property; appreciation in value derives from ownership of property. Therefore, income as the term is used in Article II, must also be income deriving from ownership of property.

The conclusion that post-marriage, pre-separation earned income is not separate property and therefore not protected from being labeled as marital property, is buttressed by the fact that the prenuptial agreement could have easily contained a

crystal clear provision such as "All of [Wife's] earned income [] received after the date of marriage, together with all assets or property, real, personal or mixed, purchased or acquired with such income to the extent it is traceable, will be considered to be separate property."

Trial Court Opinion, 9/28/2016, at 6-8.

Wife suggests these conclusions are wrong in a number of respects. According to Wife, it was the intent of the parties to "protect all aspects of her separately-owned businesses." Wife's Brief at 15. She further contends that there was no ambiguity in the meaning of the term "income" and therefore the trial court erred in conducting an analysis of the term. *Id*. at 17-18. Husband responds that "if [Wife's] interpretation of the Agreement on this matter were to be followed through, the result would be that [Wife] would get 100% of what she earned during the marriage plus she would get 50% of what [Husband] earned during the marriage." Husband's Brief at 6.

Instantly, we conclude the trial court did not err in finding that there was an ambiguity in the word "income" in the Agreement as it was not defined by the parties and could be subject to different meanings. Moreover, we discern no error or abuse of discretion in the trial court's interpretation of income and subsequent conclusion that the martial residence is martial property.[7] Thus, Wife is not entitled to relief on this basis.

---

[7] We are cognizant of the trial court's conclusion that "the parties each lost a ton of money by building a house for more than its fair market value." Trial Court Opinion, 9/28/2016, at 8.

- 10 -

## II. Amount Payable to Wife

Husband sets forth several arguments with respect to the equitable distribution order and the amount of money he owes to Wife. Husband's Brief at 10-12. He contends the trial court erred in its interpretation of Article VIII of the Agreement, which provides the following.

> Article VIII. Possible Termination of Marriage: Equitable Distribution
>
> A. In the event that the marriage of the parties is terminated for any reason by a divorce, dissolution or annulment, [Wife] and [Husband] specifically agree as follows:
>
> 1. [Husband] shall not be entitled to receive from [Wife] any share of her Separate Property….
>
> 2. [Wife] shall not be entitled to receive from [Husband] any share of his Separate Property….
>
> 3. Except as provided in this [Agreement], any marital assets as defined by Article III, herein, shall be divided equally by the parties upon divorce as the only Equitable Distribution that the parties would be entitled to upon divorce. Neither shall make any claims to or be entitled to any portion of the other's solely owned Separate Property as that term has been defined in this [Agreement]. **Further, upon divorce [Husband] shall pay to [Wife] the lump sum of $10,200.00 in full satisfaction of the note payable to [Wife] in the aforementioned amount as executed by [Husband]. Finally, it is further agreed that upon divorce [Husband] shall pay to [Wife] the lump sum of $5,000.00 in full satisfaction of her monetary contribution to the improvement of [Husband's] residence….**

Petition for Special Relief, 11/22/2011, at Exhibit A (emphasis added).

Included in its calculations, the trial court held that Husband owed Wife, in addition to the $15,200 provided in Article VIII, $13,200 from a

promissory note. Trial Court Opinion, 9/28/2016, at 16. Husband contends that Wife failed to present sufficient evidence that she had a note for $13,200. Husband's Brief at 11 ("Strangely, [Wife], who is obsessive and fastidious in the keeping of her records only provided a copy of one Note [for $15,200] as part of her exhibits.").

In considering this issue, all parties acknowledge that the Agreement is clear that Wife is entitled to a $15,200 payment from Husband. The issue then is whether this $13,200 is an additional promissory note, as Wife claimed, or whether it does not exist at all, as Husband argues.

Wife offered the following testimony at the hearing. She testified about a "demand note to [Husband]" for money he owes to her for "several credit cards that he was trying to pay on and the interest was more than he was actually paying." N.T., 8/10/2015, at 108-09. According to Wife, she paid off Husband's credit cards prior to marriage in the amount of $13,200. She testified that Husband owes her that principal, plus approximately $17,000 in interest. Wife further testified that this $13,200 was a separate note from the "$10,200 in cash [she] gave [Husband] for different items." *Id*. at 112. Wife also stated that she did not put the $13,200 in the Agreement because she already had a promissory note. *Id*. Based on the foregoing, we hold that the trial court did not err by including the $13,200

amount as being owed from Husband to Wife in the equitable distribution award.[8] Thus, Husband is not entitled to relief.

Husband also contends the trial court erred by not giving him credit for "$22,000 worth of guns that he owned prior to the parties' marriage."[9] **See** Husband's Brief at 12. With respect to this issue, the trial court opined as follows.

> [Husband] failed to adduce any credible proof as to which specific guns and ammunition were nonmarital property. It is especially noteworthy that [Husband] did not specifically list any guns or ammunition as separate property in the [Agreement]. In contrast, [Wife] testified that the guns and ammunition were purchased during the marriage. The master and [the trial court] found that [Wife] was credible and [Husband] was not.

Trial Court Opinion, 1/6/2017, at 1-2.

"[I]t is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence." **Morgante v. Morgante**, 119 A.3d 382, 387 (Pa. Super. 2015). Instantly, Wife testified that Husband purchased guns and ammunition during the marriage. **See** N.T., 8/10/2015, at 123-24. Husband even acknowledged that "[s]ome of the rifles and pistols are" marital property. **Id**. at 195. Thus, we discern no error or abuse of discretion by the trial court and conclude that Husband is not entitled to relief on this basis.

---

[8] The trial court did not award Wife any interest on this note.

[9] Wife does not respond to this argument.

## III. Counsel Fees

Finally, both Husband and Wife complain about the trial court's award with respect to the amount of counsel fees payable from Husband to Wife. *See* Wife's Brief at 20-27 (complaining that the trial court erred by not awarding her the full amount of counsel fees for Husband's breach of the Agreement as the master did); Husband's Brief at 8-10 (complaining that the trial court erred by requiring him to pay any part of Wife's counsel fees).

We review an award of counsel fees mindful of the following.

> Our standard of review of the award of counsel fees pursuant to the Domestic Relations Code is for an abuse of discretion. An abuse of discretion is [n]ot merely an error of judgment, but if in reaching a conclusion[,] the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record. [R]eview of the grant of counsel fees is limited ... and we will reverse only upon a showing of plain error.

*Habjan v. Habjan*, 73 A.3d 630, 642 (Pa. Super. 2013) (citing *Kraisinger v. Kraisinger*, 34 A.3d 168, 175 (Pa. Super. 2011)) (internal citations and quotation marks omitted).

In this case, we also evaluate the award of counsel fees in light of the Agreement, which provides the following:

> **Article XI.   Waiver of Alimony, Alimony *Pendente Lite* and/or Spousal Support**
>
> A. [] [Wife] and [Husband] agree as follows: that neither will be required to pay any spousal support, alimony *pendente lite* or alimony, counsel fees, costs or expenses to the other.
>
> ***

- 14 -

**Article XIV. Default**

> If either party defaults in the due performance of any of the terms or conditions of this [Agreement], the non-defaulting party shall recover his or her entire legal fees, costs and expenses incurred to cure any such default. It is the intention of the parties hereto that the non-defaulting party should not be required to pay legal fees, costs and expenses to enforce or defend this [Agreement].

Petition for Special Relief, 11/22/2011, at Exhibit A.

> In considering the Agreement, the divorce code provides that

> [a] party to an agreement regarding matters within the jurisdiction of the court under this part, whether or not the agreement has been merged or incorporated into the decree, may utilize a remedy or sanction set forth in this part to enforce the agreement to the same extent as though the agreement had been an order of the court except as provided to the contrary in the agreement.

23 Pa.C.S. § 3105(a). In addition, the divorce code provides specifically for the award of counsel fees: "If, at any time, a party has failed to comply with … the terms of an agreement as entered into between the parties, after hearing, the court may, in addition to any other remedy available under this part, in order to effect compliance with its order … award counsel fees and costs." 23 Pa.C.S. § 3502(e)(7).

The trial court offered the following in support of its conclusion that Husband was required to pay counsel fees to Wife.

> In September 2011, [Wife] returned to her own home from a vacation trip with her parents. [Husband] had remained at home. [Wife] found the home stripped of most of its contents. These contents included 30 to 40 totes (lidded plastic containers about the size of a laundry basket). The totes contained [Wife's] meticulously kept personal and business records, financial and

otherwise, including patient records. This Court made a finding in a contempt hearing several years ago that [Husband] removed these records in order to make it difficult for [Wife] to establish that most of the assets were purchased with her separate property. [Husband] took the records with full knowledge of their importance under the terms of the prenuptial agreement.

*  *  *

The docket of this divorce proceeding indicates that [Wife], through counsel, filed petitions for special relief or petitions for contempt on November 22, 2011; January 24, 2012; July 10, 2012; August 9, 2012; and February 24, 20[13]. Counsel for [Wife] appeared for the sundry hearings well prepared. These hearings were caused by [Husband's] "heist" of personalty in September 2011 and his refusals to surrender the important records to [Wife].

The [m]aster awarded counsel fees to [Wife] in the amount of $44,941.76. ([Wife's] total legal fees were $49,941.76, but [Husband] had already paid $5,000 toward them to purge himself of a prior finding of civil contempt.) [Wife's] lead counsel charged at a rate of $275.00 per [hour]. Associate counsel's hourly rate was $175.00 per hour. [Wife] concedes that some fees would have been incurred even if the divorce proceedings had been less contentious.

[Husband] argues that the total fees are unreasonable because [Wife's] lawyers were "high-priced" and "from a different county." There is no evidence in the record to support the assertion of unreasonableness.

The [c]ourt recognizes that there were some very real issues in the instant case, over and above those that resulted in the filings mentioned above. For this reason, the [c]ourt concludes that $15,000 better reflects the legal fees incurred as a result of [Husband's] vexatious behavior early in the case, $5,000 of which had already been paid.

Trial Court Opinion, 9/28/2016, at 9-11.

Based upon the foregoing, and contrary to Husband's assertions, the

Agreement does not prevent the trial court from awarding any counsel fees

to Wife. Moreover, we agree with the trial court that it was proper to hold Husband responsible for the portion of Wife's counsel fees that were due to his contemptuous behavior. Additionally, contrary to Wife's assertions, the default provision, Article XIV of the Agreement, does not require Husband to pay all of Wife's counsel fees under these circumstances. Instead, we hold that the trial court did not err or abuse its discretion by requiring Husband to pay that portion of counsel fees that resulted from his actions. Therefore, neither Husband nor Wife is entitled to relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2017