J-A03040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| MONICA JUNE CHACLAS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ANGELO NICHOLAS CHACLAS | : | |
| | : | |
| Appellant | : | No. 1296 EDA 2022 |

Appeal from the Decree Entered April 19, 2022
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2016-04482-DI

BEFORE: KING, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:             **FILED SEPTEMBER 26, 2023**

Appellant, Angelo Nicholas Chaclas, appeals from the decree entered in the Chester County Court of Common Pleas, which granted the petition of Appellee, Monica June Chaclas, to enforce a property settlement agreement ("Agreement") between the parties, and which awarded her attorneys' fees. We affirm in part and vacate and remand in part.

The relevant facts and procedural history of this case are as follows. Appellant and Appellee married in November 1994 and have five children. The parties separated in 2014. On July 1, 2015, they entered into the Agreement, which was incorporated into the final divorce decree on October 3, 2016. The relevant alimony portion of the Agreement provides:

_____

[*] Former Justice specially assigned to the Superior Court.

In addition, [Appellant] agrees to pay [Appellee] the sum of Six Thousand Dollars ($6,000) per month from July 2022 through June 2023. This payment to [Appellee] will terminate upon [Appellee's] death, [Appellant's] death, or [Appellee's] cohabitation or remarriage. In addition, so long as [Appellee] is not cohabitating or remarried and so long as [Appellant] is employed full time at the compensation comparable to his 2015 compensation, [Appellant] agrees to pay [Appellee] ten percent (10%) of his gross annual cash bonus (this does not include discretionary or retention bonus or awards or long term incentive awards or compensation) for two additional years in April 2020 and in April 2021. All payments of alimony/alimony *pendente lite* as set forth herein shall be tax deductible to [Appellant] and included in [Appellee's] income.

(Agreement at 9 ¶11). The relevant legal fees provision of the Agreement provides:

If either party breaches any provision of this Agreement, the other party shall have the right, at his or her election, to sue for damages for such breach, and the party breaching this contract shall be responsible for payment of legal fees and costs incurred by the other in enforcing his or her rights under this Agreement, or seek such other remedies or relief as may be available to him or her.

(***Id.*** at 23 ¶31(a)).

On September 10, 2021, Appellee filed a petition to enforce the Agreement, alleging that Appellant failed to pay her ten percent of his cash bonus, as required under the Agreement, for either 2020 or 2021. The court held a hearing on March 24, 2022. [1] At the hearing, Appellant acknowledged

---

[1] The parties agree that the issue with respect to the 2020 bonus is moot because Appellant paid ten percent of that bonus to Appellee prior to filing his answer.

- 2 -

that he received a cash bonus in 2021 of $313,712.00, and that he did not pay Appellee ten percent of that cash bonus as required under the terms of the Agreement. (*See* N.T. Hearing, 3/24/22, at 5-6). Appellant testified that he did not pay the bonus because he believed Appellee was cohabitating with an individual named Kevin Blake, and therefore, he was not required to pay her the portion of his bonus per the terms of the Agreement.

On April 19, 2022, the trial court granted Appellee's petition to enforce the Agreement. In doing so, the court found that although Appellant met his burden of proving that Appellee and Mr. Blake were engaged in a social and sexual interdependent relationship, the record did not establish that they were financially interdependent. Therefore, the court found that Appellee and Mr. Blake's relationship did not constitute cohabitation and granted Appellee's petition. In addition, based on paragraph 31 of the Agreement, the court directed Appellant to pay Appellee's legal fees because he had failed to comply with the Agreement. Appellant filed a timely notice of appeal on May 13, 2022. On May 16, 2022, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant subsequently complied.

Appellant raises the following issues for our review:

> 1. Did the trial court err as a matter of law and/or abuse its discretion by granting [Appellee's] petition for enforcement even though it concluded that [Appellee] and [Mr.] Blake cohabitated through social and sexual interdependence but later discounted their cohabitation because of an alleged lack of financial interdependence, despite evidence that

- 3 -

[Mr.] Blake supported [Appellee] and that the couple shared living expenses?

2. Did the trial court err as a matter of law and/or abuse its discretion by not finding "financial interdependence" between [Appellee] and [Mr.] Blake and by necessitating that [Appellee] and [Mr.] Blake "share the needed financial interdependence" by proof of "joint bank statements, investment accounts or combined funds?"

3. Did the trial court err as a matter of law and/or abuse its discretion by awarding attorney's fees in the amount of $16,805.00 without engaging in an analysis as to the reasonableness of said fees, thereby allowing [Appellee] to recoup "*carte blanche*" fees comprised of a non-market hourly rate.

4. Did the trial court err as a matter of law and/or abuse its discretion by awarding attorney's fees in the amount of $16,805.00 as said sum is comprised of fees for services rendered, such as the preparation of pleadings, argument, and fulfillment of discovery, wherein [Appellant] was ultimately victorious and as said sum would have been substantially lower if [Appellee] cooperated with the discovery process.

(Appellant's Brief at 4) (unnecessary capitalization omitted).

Our standard of review of an order enforcing a property settlement agreement is as follows:

When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making

its decision. However, we are bound by the trial court's credibility determinations.

***Rosiecki v. Rosiecki***, 231 A.3d 928, 932-33 (Pa.Super. 2020), *appeal denied*, 663 Pa. 51, 240 A.3d 1217 (2020) (citations omitted). "An abuse of discretion is not lightly found, as it requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures." ***Paroly v. Paroly***, 876 A.2d 1061, 1063 (Pa.Super. 2005) (citation omitted).

We address Appellant's first two claims together. Appellant argues that the trial court erred by deciding that the relationship between Appellee and Mr. Blake did not constitute cohabitation. Specifically, Appellant claims the court erred in not concluding that there was financial interdependence between Appellee and Mr. Blake. In support of this, Appellant asserts that Appellee was not paying rent or utilities to live with Mr. Blake, and she contributed to Mr. Blake's household expenses. Appellant avers that Appellee also purchased a vehicle from Mr. Blake at less than fair market value. Further, Appellant insists that Mr. Blake created an employment opportunity for Appellee, for which she was overly compensated, and in doing so provided her financial support. Appellant contends that the court should have considered the social and sexual interdependence between Appellee and Mr. Blake in its consideration as to whether there was also financial interdependence between them. Appellant submits the trial court erred in considering the lack of joint banking, investments, or combined funds, and the court should have instead found financial interdependence based on the

joint assumption of day-to-day costs. Appellant concludes the trial court erred in finding insufficient evidence of cohabitation for purposes of the Agreement, and this Court must grant relief. We disagree.

Under Pennsylvania law, cohabitation is a term of art that has been defined by this Court as existing when two people reside together "in the manner of" spouses, "mutually assuming those rights and duties usually attendant upon the marriage relationship." **Miller v. Miller**, 508 A.2d 550, 554 (Pa.Super. 1986).

> Cohabitation may be shown by evidence of financial, social, and sexual interdependence, by a sharing of the same residence, and by other means. Where, upon proof by a preponderance of the evidence, the trier of fact concludes that the dependent former spouse has entered into a relationship with "a [person] who is not a member of the [alimony recipient's] immediate family within the degrees of consanguinity" and the two have assumed the rights, duties, and obligations attendant to the marital relationship, the dependent former spouse is no longer entitled to receive alimony from the other former spouse. An occasional sexual liaison, however, does not constitute cohabitation.

**Id.** (citation omitted).

In **Miller, supra**, this Court affirmed the decision of the trial court which found that the wife and her paramour were not cohabitating within the meaning of the Divorce Code. In that case, the couple had a sexual relationship together on the weekends, but they did not share a common home on a permanent basis and did not share incomes and expenses.

This Court again considered whether a couple's relationship constituted cohabitation in **Moran v. Moran**, 839 A.2d 1091 (Pa.Super. 2003). In that

case, the trial court found that the wife spent most of her time over a two-year span with her boyfriend, whom she accompanied almost everywhere, including on business trips, weekend outings and vacations. While there was no comingling of funds, there was financial interdependence between wife and her boyfriend. The wife resided with her boyfriend, yet was not paying rent or utilities, and she testified that she occasionally paid for food and shared expenses if they went out to eat. Under those circumstances, the trial court found that the wife cohabited with her boyfriend and, as a result, she was not entitled to alimony. This Court affirmed the trial court's decision. *See id. See also Lobaugh v. Lobaugh*, 753 A.2d 834, 837 (Pa.Super. 2000) (concluding that trial court did not abuse its discretion when it found that appellant had cohabitated with her paramour where paramour lived in her home, did not have any income, and those funds that he did have were used to pay for meals and household goods).

Instantly, the trial court found that Appellant met his burden to prove that Appellee and Mr. Blake were engaged in a socially and sexually interdependent relationship. Nevertheless, the court found that Appellee and Mr. Blake's relationship did not meet the definition of cohabitation based on their lack of financial interdependence. In doing so, the court reasoned:

> To bar alimony due to cohabitation, the caselaw is very clear, there must be a showing of financial interdependence in addition to social and sexual interdependence. [Appellee] acknowledges being well-paid by Mr. Blake for work in his business for approximately 6 weeks at the start of the pandemic. She acknowledged purchasing a Jaguar vehicle

- 7 -

for $6,200, per her bank accounts. She acknowledged paying Mr. Blake ($1,000) One Thousand dollars to compensate for her extended stay in CT.

There is no evidence of any joint bank or investment accounts or combined funds. It is clear from [Appellee's] bank statements (Exhibit W-9) that she is paying her own mortgage and other expenses for her home and her living expenses. There is no indication that the parties are providing any continued financial support of one another. Lastly, there is no evidence that the parties are sharing their incomes.

[Appellant] has failed to prove [Appellee] and Mr. Blake have mutually assumed the duties attendant to the husband/wife relationship or that they share the needed financial interdependence. Therefore, his obligation to pay 10% of his bonus has not been defeated by her cohabitation.

(Trial Court Opinion, filed 4/19/22, at 7).

The record supports the trial court's finding that Appellee and Mr. Blake did not co-mingle funds. Additionally, Mr. Blake paid Appellee for work she performed at his company, and the record fails to support Appellant's suggestion that she was overpaid. Further, during the period when Appellee resided with Mr. Blake in Connecticut, she maintained her own residence in Pennsylvania, which was not used by Mr. Blake. Under these circumstances and in light of our deferential standard of review, we see no abuse of discretion in the trial court's finding of no financial interdependence between Appellee and Mr. Blake. **See Rosiecki, supra**. Therefore, Appellant's first two issues merit no relief.

In his third issue, Appellant argues the trial court abused its discretion when it awarded attorneys' fees to Appellee. Specifically, Appellant claims

that the trial court failed to consider the reasonableness of the fees requested. Appellant insists the court was required to assess the professional skill and standing of Appellee's attorney and to consider the market rate for legal services for that time and place. Appellant concludes the court's award of attorney's fees was improper, and this Court must grant relief. We agree.

> Our standard of review of the award of counsel fees pursuant to the Domestic Relations Code is for an abuse of discretion. **See Bowser v. Blom**, 569 Pa. 609, 807 A.2d 830, 834 (Pa. 2002). An abuse of discretion is "[n]ot merely an error of judgment, but if in reaching a conclusion[,] the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record." **Id.** (citations omitted). "[R]eview of the grant of counsel fees is limited...and we will reverse only upon a showing of plain error." **Isralsky v. Isralsky**, 824 A.2d 1178, 1192 (Pa.Super. 2003) (citation omitted).

**Habjan v. Habjan**, 73 A.3d 630, 642 (Pa.Super. 2013) (quoting **Kraisinger v. Kraisinger**, 34 A.3d 168, 175 (Pa.Super. 2011)).

In **McMullen v. Kutz**, 925 A.2d 832 (Pa.Super. 2007), *aff'd*, 603 Pa. 602, 985 A.2d 769 (2009), this Court discussed whether legal fees must be reasonable even though the contract awarding such fees does not specify reasonableness. This Court explained that a reasonableness requirement is implied in an agreement that provides for an award of attorney fees. Specifically, this Court held that "when a contract provides for the award of counsel fees, but does not specify that they must be reasonable, the trial court must nonetheless examine the fees for reasonableness." **Id.** at 835.

In **In re Estate of LaRocca**, 431 Pa. 542, 246 A.2d 337 (1968), our

Supreme Court established the following factors that a court must use to evaluate the reasonableness of attorney fees and costs:

the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was 'created' by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

*Id.* at 546, 246 A.2d at 339 (citations omitted).

Here, the trial court found that Appellee was entitled to legal fees pursuant to paragraph 31 of the Agreement. The court explained that "the resulting award of legal fees can be attributed to one decision made by [Appellant] and that was to exercise self-help rather than to seek [c]ourt approval in the termination of alimony." (Trial Court Opinion at 8). The court further noted that:

the underlying [Agreement] does not require that the legal fees incurred and awarded be reasonable. [Appellant] argues in his post-trial letter, as permitted by the [c]ourt, that the fees are not reasonable based on his and his firms fees, however, that does not persuade the [c]ourt that [Appellee's] counsel's fees are not reasonable. Each party is entitled to be represented by their counsel of choice.

*Id.*

Although the trial court was correct in observing that the Agreement did not expressly contain a requirement for reasonableness, Pennsylvania law provides that a term of reasonableness is implied in a contract awarding

- 10 -

attorney's fees. ***See McMullen, supra***. As the trial court declined to analyze the reasonableness of Appellee's counsel's fees, we remand for further proceedings such that the trial court can assess the reasonableness of the attorneys' fees requested by Appellee.[2]

Order affirmed in part and vacated in part. Case remanded for further proceedings. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/2023

---

[2] Based on our disposition, we need not address Appellant's fourth issue on appeal.