J-S16018-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| E.D.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| L.D.H. | : | No. 1711 EDA 2020 |

Appeal from the Order Entered July 24, 2020
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2017-15205-172,
PACSES # 383116674

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.*

MEMORANDUM BY McLAUGHLIN, J.:          **FILED SEPTEMBER 7, 2021**

E.D.H. ("Father") appeals from a child support order. He argues the court did not accurately calculate income for L.D.H. ("Mother"), erred in denying a mortgage adjustment, and erred in awarding Mother counsel fees. We affirm.

Father and Mother were married in 2009. In 2017, Mother filed a Complaint in Divorce. Mother and Father have two minor children and share joint custody. The parties agreed to a child support and alimony pendente lite order, which was entered in October 2017.

_____

* Former Justice specially assigned to the Superior Court.

In August 2018, Mother filed a petition to modify.[1] In a November 2018 recommendation and order, a Support Hearing Officer directed Father to pay $886.53 per month to Mother,[2] Father filed exceptions. Following a hearing, the court denied most of the exceptions. It rejected his claims that Mother should be bound by the net income agreed to in the prior order and that her income should be based on earning capacity. The court explained it was not an "earning capacity case," but rather an actual income case, and Mother is not underemployed. Order, filed Mar. 4, 2019, at 1. The court also held that Mother's 2018 federal tax refund should be used to calculate Mother's income, but that Mother had not filed her taxes prior to the hearing with the Support Officer. *Id.* at 2. The court found that the Support Officer had discretion whether to make a downward adjustment due to the mortgage obligation, but that it had not stated its reasons for not applying an adjustment. *Id.* at 3. The court thus remanded to the Support Officer for recalculation of Mother's net income and for the Officer to place on the record her reasoning for denying the mortgage adjustment:

> 1. Father's exceptions are DENIED except for paragraphs 2
> and 3 of this order.

---

[1] Both Mother and Father filed petitions to modify prior to August 2018, which the court denied in November 2018 because the parties failed to prove a material and substantial change of circumstances.

[2] This award consisted of $1,010.82 per month for two children, less $157.45 for medical insurance paid by Father, less $302.47 per month on account of a shared custody schedule, plus $335.63 for APL.

2. Mother, through her counsel, will send to Support Hearing Officer . . . and father a true and correct copy of her filed 2018 Federal Income Tax Return, which will show mother's refund. Support Hearing Officer . . . will, upon receipt of same, recalculate mother's increased net monthly income and recalculate the support order and send it to the parties.

3. Support Hearing Officer Coacher will amend the order to reflect her reasoning with respect to her denial to give father an adjustment on the mortgage payments: "Specify, in writing, the reasons for, and findings of fact justifying the denial."

Order, Mar. 4, 2019. Father filed an appeal, which this Court dismissed as interlocutory.

In April 2019, the Support Officer entered an order revising the recommended order, as the court had directed. This time, both Father and Mother filed exceptions. After a hearing, the court denied Father's exception to denial of the mortgage adjustment and granted the parties' exceptions relating to the calculation of Mother's income. Memorandum and Order, Feb. 14, 2020. The court again remanded to the Support Officer, this time for a more specific explanation of the calculation of Mother's income, as the court and the parties were unable to determine how the Support Officer calculated the net income.[3] *Id.* at ¶¶ 9-13. The court further found that the Support Officer's rationale for denying the mortgage adjustment was "sound and . . . an appropriate exercise of . . . discretion." *Id.* at 14-16. The court also found

_____

[3] The parties also agreed that the alimony pendente lite should be terminated, as they settled the equitable distribution matter in October 2019.

that the Master erred in calculating the APL, as it should have applied a newly amended rule. *Id.* at ¶¶ 20-22. The court entered the following order:

> 1. Father's and Mother's Exceptions, as to Mother's income, are GRANTED.[4]
>
> 2. Father's Exception, as to the mortgage payment adjustment, is DENIED.
>
> 3. Father's and Mother's Exceptions, as to the need to implement the new APL/Child Support formula retroactive to the filing date of August 9, 2018, are GRANTED.
>
> 5. The APL component of the Order, in accordance with the parties Equitable Distribution Agreement, terminates effective October 30, 2019 (except for arrears).
>
> 6. The matter is remanded to the Support Hearing Officer to administratively recalculate the Order consistent with the findings that accompany this Order.
>
> 7. In the interim, the Support Officer's Order of April 30, 2019, shall remain in full force and effect.

Order, Feb. 14, 2020. The court then amended this order denying the exceptions requesting retroactive application of the new APL/Child Support order, which was contained in the third paragraph of the order. Order, filed Feb. 25, 2019. The court noted that "Rule 1910.16-4(a)(2) applies." *Id.*

In March 2020, the Support Officer entered an order stating that Mother's income was calculated based on her 2018 tax return, which she filed

---

[4] In Mother's exceptions, she argued that, although the Support Officer properly used the 2018 tax return, she did not properly calculate Mother's income. Father argued Mother's income should be calculated "by taking the sum of her monthly net income from employment . . . which includes wages and tips, and the portion of her federal tax refund that includes only the refundable credits . . . when claiming one child." Plaintiff's r. filed. Sept. 12, 2019, at 2. He also references the voluntary reduction and earning capacity law in income law. *Id.* at 4.

as head of household, and she had a net monthly income of $1,891.08. Father's income was unchanged, at $3,997.00 per month. The order calculated the support obligation as $944.43 per month, consisting of $1,025.67 per month for two children, less $150.38 for medical insurance paid by Father, less $300.09 per month due to the shared custody schedule, and plus $369.23 APL through October 2019.

Father filed exceptions. After argument, the court denied the exceptions in July 2020. The court further directed Father to pay Mother $962.50 in counsel fees, reasoning that the third set of exceptions were repetitious:

> 8. The Exceptions that Father filed this time are directed totally at his dissatisfaction over his disagreement with the Court over the use of Mother's tax return for the purpose of determining her net monthly income (this issue was previously addressed in Father's first and second set of Exceptions).
>
> 9. In point of fact, at one point during the current Exceptions argument, Father (who is an accountant by profession), appeared to concede that the Officer's calculation itself, from the 2018 return, was "mathematically accurate".
>
> 10. Accordingly, this third set of Exceptions are therefore needlessly repetitious and represent yet a third time Father has argued the same point relating to the calculation of Mother's income; albeit to two different Judges (Judge Bertin on the 2019 Exceptions and the undersigned on the February 2020 Exceptions and the current Exceptions).
>
> 11. On Father's exception that the Support Hearing Officer failed to provide him with the mortgage adjustment, this point was not directed as part of the undersigned's remand as it was previously raised by Father in his prior Exceptions (and specifically "DENIED" in Section 2. of the undersigned's February 25, 2020 Order).

12. Again, this exception item is needlessly repetitious and represented a second attempt to re-litigate a point that was previously addressed, and ultimately determined to finality, by the Court.

13. On the overall, these third set of Exceptions were clearly not necessary or appropriate.

14. Father's actions in filing them caused Mother to expend unnecessary legal fees to defend against his Exceptions and to which she is entitled to reimbursement.

Order, July 24, 2021, at 2-3. The court ordered Father to pay $962.50 toward the payment of Mother's counsel fees—the fees incurred in the support matter since the filing of Father's final exceptions. *Id.* at 3-4. Father filed a notice of appeal.

Father raises the following issues:

1) Did the Trial Court err as a matter of law and abuse its discretion when it calculated Mother's monthly net income (MNI) where the evidence presented established that Mother had voluntarily reduced her income?

2) Did the Trial Court err as a matter of law and abuse its discretion by applying the wrong formula when determining which formula to apply for the calculation of child support and Alimony Pendente Lite (APL)?

3) Did the Trial Court err as a matter of law and abuse its discretion when it Ordered [Father] to pay Mother's legal fees?

4) Did the Trial Court err as a matter of law and abuse its discretion in denying [Father] a mortgage adjustment?

Father's Br. at 4.

Father first claims that Mother's income should be based on her income earned at a prior hair salon, as she made more money in tips at the prior job.[5] He argues that she did not present evidence that the change in employment was involuntary or that she attempted to mitigate her reduction in earnings. He therefore maintains she did not meet her burden under Pennsylvania Rule of Civil Procedure 1910.16-2(d) and there should be no change to her monthly net income for purposes of calculating support or the support obligation. He claims the trial court did not provide any authority for its direction to use Mother's income from the 2018 tax return rather than her earning capacity as determined by the prior support order. Father further notes that during 2018, Mother received disability pay for a portion of time. Such pay would be used to calculate support but would not be taxable income for federal tax purposes and therefore was not present on her 2018 tax return. He maintains that Mother's monthly pay can be determined from her paystubs and that her tax refund should be included as income.

We review a court's determinations regarding support for an abuse of discretion. *Woskob v. Woskob*, 843 A.2d 1247, 1251 (Pa.Super. 2004). "Although a person's actual earnings usually reflect his earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings." *Id.* "Earning capacity is defined as the amount

---

[5] Mother claims he waived this claim for failing to timely raise it. However, it appears Father has repeatedly raised it, it was addressed in an April 30 Memorandum and Order, from which Father filed an interlocutory appeal, and he continued to raise it after.

that a person realistically could earn under the circumstances, considering his age, health, mental and physical condition, training, and earnings history." *Id.* Where a "party voluntarily assumes a lower paying job, quits a job, leaves employment, changes occupations or changes employment status to pursue an education, or is fired for cause, there generally will be no effect on the support obligation." Rule 1910.16-2(d)(1); *see also Woskob*, 843 A.2d at 1254 ("Where a party assumes a lower paying job or willfully fails to obtain appropriate employment, the support obligation is determined by his assessed earning capacity").

The trial court concluded:

> Father argues that because Mother stipulated in an agreed order on October 27, 2017 that her net income was $2,470.00[6] per month that she is bound by that and that that is her earning capacity for the support hearing held on November 1, 2018 and Support Hearing Officer['s] . . . finding of a net income for [M]other of $2,025.00 per month is in error. The court disagrees.
>
> This is not an earnings "capacity" case. This is an earnings case. Mother was a hairdresser on October 26, 2017 and is still a hairdresser and was a hairdresser on November 1, 2018. Mother is not underemployed. Mother is not obtaining employment in a different occupation to purposely lower her income in order to receive higher support.
>
> Credibility of witnesses and fact-finding is for the Support Hearing Officer, not the reviewing court . . . . The reason for this is clear. The Support Hearing Officer sees and hears the witnesses and watches them testify, not the reviewing court. Mother gave the Support Hearing Officer her paystubs and testified they represented all the cash tips she received.

---

[6] On appeal, Father uses a different calculation and claims Mother's net income is $3,031.00. Father's Br. at 23.

> The Support Hearing Officer believed [M]other. That is the Support Hearing [O]fficer's province to do. Thus the Support Hearing Officer found [M]other net income to be $2,205.00 per month, not $2,470.00 per month at the present time. The Support Hearing Officer is basing her findings on [M]other's "actual income," as she should. Mother changed salons. Further, she has different time commitments available for work due to having to attend therapy. There was no error here.

Memorandum and Order, filed Mar. 4, 2019, at 1-2.

The trial court did not abuse its discretion. Although Mother switched job locations, she remained a hairdresser, and there was no evidence she reduced her income to reduce child support obligations. Further, as to Father's argument that the tax refund should be considered income to Mother, the trial court agreed and ordered it to be included. *Id.* at 2. Father's first claim lacks merit.[7]

In his second argument, Father claims that the new formula for calculating APL, contained in Rule 1910.16-4(a)(1) and effective January 1, 2019, should apply. Father claims that Mother agreed with this, and the court's initial order required the use of the new formula. However, he claims the court

---

[7] The certified record does not contain the transcripts related to the support action. "[I]f a document is not in the certified record, the Superior Court may not consider it." *Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa.Super. 2006) (*en banc*). "[T]he responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." *Id.* To the extent Husband's argument relies on the transcript, he has waived the argument. However, insofar as we can resolve the claim without the transcript, we will review it. *See Commonwealth v. Houck*, 102 A.3d 443, 456 (Pa.Super. 2014) (noting that an appellant's failure to ensure the inclusion necessary transcript in the certified record renders any claim that cannot be resolved in the absence of that transcript waived).

reversed its position in an amended order, stating the old formula applied pursuant to Rule 1910.16-4(a)(2). He claims the amended order was error and an abuse of discretion.

The trial court found the amendments did not apply to the support order in this case, noting the original order was entered before January 1, 2019 and the parties did not agree to apply the new rules to the modification:

> Effective January 1, 2019, the long-standing formula set forth in the Rules of Court, to be utilized by the trier-of-fact for the calculation of child support and APL, was changed by our Supreme Court as a result of the Tax Cuts and Jobs Act of 2017.
>
> For cases filed after January 1, 2019, the calculation to be utilized was reversed such that the obligor's APL obligation is to be calculated first and then the adjusted incomes of both parties are factored into to the calculation of each parties['] child support obligations pursuant to Rule 1910.16-4 (a) (1) (Part B).
>
> > [41] As part of the October 30, 2019 Agreed Order, the parties settled all outstanding equitable distribution claims and APL terminated.
>
> For cases filed prior to January 1, 2019 (such as in the within matter), the prior formula in effect whereby child support is calculated first and then APL, set forth in Rule 1910.16.-4 (a) (2) (Parts I through IV), still applies.
>
> . . .
>
> In the within matter, there was already an Order in place as of January 1, 2019. There was no agreement by the parties to proceed with two calculations, under the prior formula and the new formula. Thus, the formula set forth in Rule 1910.16-4 (a) (1) (Parts A through E) clearly applies.
>
> Following the February 6, 2020 argument on Father's second set of Exceptions, the undersigned mistakenly directed the Officer to use the new formula on the remand

directed in the Order entered on February 13, 2020. Upon discovering an error in the undersigned's interpretation of the new Rule, which had only been in effective for approximately five weeks, the undersigned proceeded to promptly enter an Amended Order on February 25, 2020 to correct the error.

Trial Court Opinion, filed Feb. 19, 2021, at 12-14 (some footnotes omitted).

Pennsylvania Rule of Civil Procedure 1910.16-4 governs the calculation of support obligations, and provides, in part, that:

(a) The trier-of-fact shall use either the subdivision (1) or subdivision (2) formula to calculate the obligor's share of basic child support, either from the schedule in Pa.R.C.P. No. 1910.16-3 or the formula in Pa.R.C.P. No. 1910.16-3.1(a), as well as spousal support and alimony *pendente lite* obligations. . . .

(1) The formula in Parts A through E is for an order entered on or after January 1, 2019, or for a modification of an order entered before January 1, 2019 that includes spousal support or alimony pendente lite in which the amendments to the Internal Revenue Code made by Section 11051 of the Tax Cuts and Jobs Act of 2017 (Pub. L. No. 115-97) expressly apply.

. . .

(2) The formula in Parts I through IV is for a modification of an order entered before January 1, 2019 that includes spousal support or alimony *pendente lite*.

Pa.R.C.P. 1910.16-4(a)(1).[8]

_____

[8] The notes to this Rule provide:

Note: Section 11051 of the Tax Cuts and Jobs Act of 2017 (Pub. L. No. 115-97) amended the Internal Revenue Code

*(Footnote Continued Next Page)*

Section 11051 of the Federal Tax Cuts and Jobs Act of 2017 (Pub. L. No. 115-97) provides that its provisions "shall apply to--(1) any divorce or separation instrument (as defined in section 71(b)(2) of the Internal Revenue Code of 1986 as in effect before the date of the enactment of this Act) executed after December 31, 2018, and (2) any divorce or separation instrument (as so defined) executed on or before such date and modified after such date if the modification expressly provides that the amendments made by this section apply to such modification." Pub.L.No. 115-97.

Here, the first support order was entered before December 31, 2018 and the modification order did not expressly provide that the amendments contained in Section 11051 of the Tax Cuts and Jobs Act of 2017 would apply to the order. The trial court therefore did not err in concluding the amendments did not apply to the support order.

In his third argument, Father challenges the award of counsel fees against him. He notes the court found the award of fees proper because Father raised issues in his Exceptions that had already been "addressed and determined by the Officer, or either Judge Bertin or the undersigned." Father's Br. at 28 (quoting Order, filed July 24, 2020). Father argues that because

_____

> by repealing the alimony deduction -- the amount of spousal support, alimony *pendente lite*, and alimony paid or received -- from the payor's gross income and the alimony inclusion into the payee's gross income.

Pa.R.C.P. 1910.16-4(a), Notes.

Mother started the litigation process, she should not be entitled to counsel fees. Further, "[t]he filing of Exceptions most certainly is within the right of a support litigant seeking to obtain a lawful and just Order" and the court was "essentially seeking to punish Father for exercising his right to challenge decision that were made which is his right to do." *Id.* at 29. He argues that any repetitions in the arguments raised "[were] due to the fact that Order were continuously remanded and new Orders entered." *Id.* He was compelled to assert exceptions to each order to ensure he preserved the issues. *Id.*

The award of counsel fees in a support action is governed by statute, which provides: "If an obligee prevails in a proceeding . . . to obtain a support order, the court may assess against the obligor . . . reasonable attorney fees . . . incurred by the obligee . . . ." 23 Pa.C.S.A. § 4351(a). "[E]ven when the obligee prevails, counsel fees are not automatic, but instead are contingent upon in the discretion of the court." *Bowser v. Blom*, 807 A.2d 830, 835 (Pa. 2002). Courts consider "the totality of relevant circumstances that informs the determination of whether to award counsel fees." *Id.* at 836.

Here, we cannot say the court abused its discretion when it required Father to pay Mother's counsel fees associated with the final exceptions. The court repeatedly granted certain exceptions, requiring the Support Officer to enter amended orders. However, Father continued to raise exceptions that previously had been denied.

In his last argument, Father claims the court erred in finding he was not entitled to a mortgage adjustment. Father notes that, although the house was

pre-marital property titled solely in his name, both Mother and Father are on the mortgage. Further he claims that she benefitted from the equity in the marital residence and that the balance on the mortgage is higher than the balance owed on the date of the marriage. He argues he was paying child support and APL while also paying the expenses to maintain the marital residence and should receive a mortgage adjustment to help with the payments.

The trial court concluded it was not an abuse of discretion to deny a downward departure, noting the house was not marital property:

> Rule 1910.16-6(e)(2) allows for the potential of a downward reduction in the support amount if the obligor is occupying the marital residence and the mortgage payment exceeds 25% of his monthly net income (less child support, spousal support, and APL).
>
> Notably, a downward reduction and the specific amount of a reduction, is completely within the discretion of the trier-of-fact based on the circumstances of the case.
>
> There is no dispute in this case regarding whether the mortgage payment on the former marital home exceeded the threshold in the Rule. Rather, Father argues that there was an abuse of discretion by not providing him with the adjustment.
>
> . . .
>
> A decision by a finder of fact to not issue a deviation from the child support guidelines is within the discretion of the fact-finder; absent an abuse of discretion, the support order will be upheld. . . .
>
> In the April 30, 2019 Order, the Support Hearing Officer clearly set forth her reasoning for denying Father a mortgage adjustment stating as follows:

- 14 -

Father's request for a reverse mortgage deviation is denied. The real estate which is secured by the mortgage being paid by Father is pre-marital property titled only in the name of Father. As such, the only claim Mother will have in Equitable Distribution would be a percentage of its increase in value during the time of the marriage. To require Mother to contribute to the expenses of this mortgage after separation is inappropriate because Father is not preserving a marital asset but an asset that solely belongs to him.

In making this determination in the Order, appropriate emphasis was placed upon the fact that the property in question (where Father resides), was not marital property as Rule 1910.16-6(e) contemplates, but rather was property owned by Father prior to the marriage. Accordingly, Wife had no economic claim to the home after separation, and except for a claim for a percentage of the increase in value that occurred during the marriage, she would not see any financial benefit from the property to which she would be contributing maintenance toward. In short, it would be unreasonable and inappropriate for Mother to contribute, via a mortgage adjustment in Father's favor, to the upkeep and expenses of Father's property (which he is residing in) for his benefit alone.

Ironically, by the time the matter was argued before the undersigned in February 2020, on the second set of Exceptions, it was acknowledged by both parties' counsel that, in fact, Mother in actuality did not benefit from any increase in value during the by-then completed equitable distribution proceedings. In essence, the long delay in the support litigation resulted in an affirmation of the very rationale set forth by the Support Hearing Officer (thereby reinforcing that it was "sound").

Trial Ct. Op., filed Feb. 19, 2021, at 17-19 (footnotes and citations omitted).

The trial court did not abuse its discretion. Here, the home is non-marital property, such that Wife was only entitled to any increase in value during the marriage for purposes of equitable distribution. Thus, a downward adjustment was not warranted.

- 15 -

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/7/2021